IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NAMOD PALLEK *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>BROOKE L. ROLLINS, in her official capacity as U.S. Secretary of Agriculture, *et al.*<br><br>*Defendants.* | Civil Action No. 1:25-cv-01650 |

**DECLARATION OF ALAN BUTLER IN SUPPORT OF
PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

Pursuant to 28 U.S.C. § 1746, I, Alan Butler, declare as follows:

1. My name is Alan Butler. I am over the age of 18. If called as a witness, I could and would testify competently to the matters set form below.

2. I am the President and Executive Director of the Electronic Privacy Information Center (EPIC).

3. The information in this declaration is based on my personal knowledge, materials I have reviewed, and information known to me in the course of my duties at EPIC.

4. EPIC is a non-profit, public interest research center established in 1994 to focus public attention on emerging privacy and civil liberties issues. EPIC's mission is to secure the fundamental right to privacy in the digital age for all people through advocacy, research, and litigation.

5. Central to EPIC's mission is oversight of government activities that impact individual privacy, free expression, and democratic values.

1

6. EPIC routinely monitors, analyzes, and educates the public about the collection, use, retention, and transfer of personal information by federal agencies, including large-scale databases and mass surveillance programs.

7. EPIC has also undertaken considerable research, advocacy, and public education concerning the systems and databases used in the provision of public benefits, including the Supplemental Nutrition Assistance Program ("SNAP").

8. In 2018, EPIC provided testimony to the U.S. House Committee on Oversight and Government Reform warning lawmakers about the acute privacy and security consequences of establishing even a limited-purpose federal database of SNAP recipients. These include the dramatically enhanced risk of data breach resulting from the centralization of information; the heightened risk of identity theft and fraud, which can interfere with an individual's access to credit, housing, public benefits, and other essentials; the intrusion inherent in the wrongful disclosure of sensitive personal information to people and agencies that are not lawfully entitled to access it; and the increased risk of having one's benefits terminated on the basis of defective matching and consolidation of previously disaggregated datasets.

9. For decades, EPIC has made extensive use of public notices and records concerning the collection, use, retention, and transfer of personal information by federal agencies. These include Systems of Records Notices ("SORNs") mandated by the Privacy Act of 1974, 5 U.S.C. § 552a; Information Collection Review ("ICR") documentation mandated by the Paperwork Reduction Act ("PRA"), 44 U.S.C. §§ 3501 *et seq.*; and Privacy Impact Assessments ("PIAs") mandated by section 208 of the E-Government Act of 2002, 44 U.S.C. § 3501 note.

10. These records are indispensable for EPIC to fulfill its organizational mission. They enable EPIC to identify, analyze, comment upon, shape advocacy around, focus public

attention on, and in some cases undertake litigation to halt the collection, use, retention, and transfer of personal information by federal agencies.

11. EPIC has relied on these records on hundreds of occasions to formulate comments, testimony, reports, published analysis, educational materials, statements to the press and public, litigation materials, and requests under the Freedom of Information Act ("FOIA").

12. SORNs, ICR documentation, and PIAs are often the only records available to EPIC of how and why a federal entity is collecting personal information, what information is being collected, what burdens collection will impose, how the information may be used, with whom it may be shared, how it will be stored and secured, and whether and when it will be disposed of. A public accounting of these details is both required by law and vital to the protection of the vast quantities of personal data that the federal government collects and uses or intends to collect and use.

13. When an agency fails to timely publish these records with respect to a surveillance program, system of records, or other federal activity implicating privacy and personal information, EPIC is denied information essential to its operations, and EPIC's mission of focusing public attention on emerging privacy and civil liberties issues and securing the fundamental right to privacy is materially impaired.

14. EPIC routinely relies on SORNs required by the Privacy Act to educate the public, to share informed feedback and expertise with agencies and policymakers, and to identify unlawful or otherwise objectionable surveillance and personal data practices.

15. EPIC is one of the few organizations in the country that regularly exercises its right as an "interested person" under the Privacy Act "to submit written data, views, or arguments" concerning systems of records detailed in the Federal Register. 5 U.S.C. §

552(e)(11).

16. When an agency establishes a system of records without timely publishing a compliant SORN in the Federal Register, EPIC cannot fully analyze, comment upon, shape advocacy around, or focus public attention on that system of records—if EPIC is made aware of that system at all.

17. This denies EPIC information to which it is entitled and frustrates EPIC's mission. As a result, EPIC must divert its limited resources to more burdensome methods of research and information gathering, including time-intensive FOIA requests and litigation for relevant records. Moreover, EPIC is denied its rightful opportunity to be heard by the agency proposing to establish or modify a system of records.

18. EPIC also routinely relies on ICR documentation required by the Paperwork Reduction Act to educate the public, to share informed feedback and expertise with agencies and policymakers, and to identify unlawful or otherwise objectionable information collection practices.

19. EPIC is one of the few organizations in the country that regularly exercises its right to provide comment on proposed collections of information detailed in ICR documentation. 44 U.S.C. §§ 3506(c)(2)(A), 3507(b), 3507(h)(1).

20. When an agency or the Office of Management and Budget (OMB) fails to publish required ICR documentation, EPIC cannot fully analyze, comment upon, shape advocacy around, or focus public attention on the relevant collection of information—if EPIC is made aware of that collection of information at all.

21. This denies EPIC information to which it is entitled and frustrates EPIC's mission. As a result, EPIC must divert its limited resources to more burdensome methods of

research and information gathering, including time-intensive FOIA requests and litigation for relevant records. Moreover, EPIC is denied its rightful opportunity to be heard by the OMB and the agency proposing to undertake a collection of information.

22. Since January 2025, EPIC has closely tracked the Administration's efforts to consolidate and increase its access to personal information maintained by federal and state governments. This includes Executive Order 14243, *Stopping Waste, Fraud, and Abuse by Eliminating Information Silos* (March 20, 2025), and the U.S. Department of Agriculture (USDA)'s recent efforts to secure state-level SNAP beneficiary data. Over that time, EPIC has published analysis, developed public resources, provided expertise to lawmakers and members of the press, undertaken litigation, and engaged in extensive advocacy concerning the privacy, security, and legal risks of the Administration's data consolidation activities.

23. As far as EPIC can determine, USDA has not published any SORN(s), ICR documentation, or PIA(s) applicable to the agency's collection and consolidation of SNAP beneficiaries' personal data currently held by states and state service providers.

24. This failure to publish required documentation has made it impossible to know the full parameters of the consolidated SNAP beneficiary system that USDA intends to construct. For example, I have been informed that USDA may be developing a system that would provide the agency with continuous, real-time updates from state-level databases of SNAP beneficiary data. A persistent linkage of this sort would create additional vulnerabilities that would further heighten the privacy and security risks to SNAP beneficiaries of federal consolidation. However, it is impossible for EPIC to evaluate the design of USDA's planned SNAP beneficiary data system absent the disclosures required under the Privacy Act, Paperwork Reduction Act, and E-Government Act.

25. By undertaking the collection and consolidation of SNAP beneficiary data without first publishing the required SORN(s), ICR documentation, and PIA(s), the USDA has denied EPIC information to which it is entitled at the time it was required to be disclosed; frustrated EPIC's mission of focusing public attention on emerging privacy and civil liberties issues and securing the fundamental right to privacy; prevented EPIC from fully educating the public about the USDA's intended collection, use, retention, and transfer of SNAP beneficiary data and the policies and procedures associated therewith; prevented EPIC from fully educating the public about the systems and databases USDA intends to use to collect, store, and process SNAP beneficiary data; forced EPIC to divert its limited resources and staff time to more burdensome methods of research and information gathering to obtain information that USDA was required to proactively disclose; and denied EPIC its rightful opportunity to be heard by the agency before it initiates collection of SNAP beneficiary data and the establishment or modification of the relevant system(s) of records.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26th day of May 2025, in Washington, D.C.

_____
Alan Butler