# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NAMOD PALLEK *et al.*,

        Plaintiffs,

      v.

BROOKE L. ROLLINS, in her official capacity as U.S. Secretary of Agriculture, *et al.*,

        Defendants.

Case No. 1:25-cv-01650-JMC

Judge Jia Cobb

# DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND .............................................................................................................. 3

I.    The SNAP Program ........................................................................................... 3

II.   The May 6 Letter ............................................................................................... 4

III.  Subsequent Developments ................................................................................ 6

IV.   Procedural History ........................................................................................... 6

LEGAL STANDARD ....................................................................................................... 7

ARGUMENT .................................................................................................................... 8

I.    Plaintiffs Cannot Demonstrate Irreparable Harm ............................................ 8

    A.    The Individual Plaintiffs Have Failed To Establish Irreparable Injury Resulting From An Alleged Disclosure Of Their Information ....................................... 9

    B.    The Organizational Plaintiffs' Alleged Denial Of Information Is Neither Harmful Nor Irreparable ........................................................................... 12

    C.    Mazon Fails To Establish Irreparable Injury Based On Alleged Distrust .................. 12

II.   Plaintiffs Are Unlikely To Succeed On The Merits Of Their Claims .............................. 13

    A.    Plaintiffs Have Failed To Establish A Likelihood Of Article III Standing ................ 13

        1.    Plaintiffs Have Failed to Establish Injury-in-Fact from the Alleged Disclosure of Their Information .......................................................... 14

        2.    Plaintiffs have Failed to Establish Informational and Procedural Injury ............. 18

        3.    MAZON Fails to Establish Independent Organizational Injury ......................... 19

    B.    Plaintiffs Fail To Establish Likelihood Of Success On The Merits Of Their APA Claims .................................................................................. 21

        1.    The May 6 Letter Is Not Final Agency Action ...................................... 21

        2.    Plaintiffs Cannot Assert Violations Of The Privacy Act Through The APA ......... 22

        3.    Plaintiffs Cannot Establish A Violation Of The Privacy Act ............................ 24

        4.    Plaintiffs Cannot Establish A Violation Of The Paperwork Reduction Act .......... 24

     5.     The May 6 Letter Is Not Arbitrary And Capricious ............................................... 27

III.    Balance of Equities ......................................................................................................... 28

IV.    The Court Should Convert the Motion To A Preliminary Injunction .............................. 28

V.    Plaintiffs Should Be Ordered To Post Substantial Security In Connection With Any Preliminary Injunctive Relief And Any Preliminary Relief Should Be Stayed To Allow Consideration Of Whether To Appeal .................................................................... 29

CONCLUSION ................................................................................................................ 30

# TABLE OF AUTHORITIES

## Cases

*Alegent Health-Immanuel Med. Ctr. v. Sebelius*,
    34 F. Supp. 3d 160 (D.D.C. 2014) ......................................................................... 24

*All. for Retired Ams. v. Bessent*,
    --- F. Supp. 3d ---, 2025 WL 740401 (D.D.C. Mar. 7, 2025) ....................................8, 10, 11, 13

*Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Dep't of Lab.*,
    --- F. Supp. 3d --- , 2025 WL 1129227 (D.D.C. Apr. 16, 2025) ......................................... 14, 24

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*,
    No. 25-1411, 2025 WL 1249608 (4th Cir. Apr. 30, 2025) ....................................................... 24

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*,
    No. CV ELH-25-0596, 2025 WL 868953 (D. Md. Mar. 20, 2025) ........................................... 24

*Am. Fed'n of Tchrs. v. Bessent*,
    765 F. Supp. 3d 482 (D. Md. 2025) ......................................................................... 24

*Am. Fed'n of Tchrs. v. Bessent*,
    No. 25-1282, 2025 WL 1023638 (4th Cir. Apr. 7, 2025) ....................................................... 24

*Am. Legal Found. v. FCC*,
    808 F.2d 84 (D.C. Cir. 1987) ................................................................................... 19

*Ashland Oil, Inc. v. FTC*,
    409 F. Supp. 297 (D.D.C. 1976) ..............................................................................11

*Assocs., Inc. v. Nat'l Insts. of Health*,
    579 F.2d 1155 (9th Cir. 1978) ................................................................................. 24

*Baker DC v. Nat'l Labor Rels. Bd.*,
    102 F. Supp. 3d 194 (D.D.C. 2015) ..........................................................................11

*Bennett v. Spear*,
    520 U.S. 154 (1997) ......................................................................................... 21, 22

*Block v. Cmty. Nutrition Inst.*,
    467 U.S. 340 (1984) ............................................................................................. 22

*Bowen v. Massachusetts*,
    487 U.S. 879 (1988) ............................................................................................. 22

*Chaplaincy of Full Gospel Churches v. England*,
    454 F.3d 290 (D.C. Cir. 2006) ........................................................................... 9, 12, 13

*Chef Time 1520 LLC v. Small Bus. Admin.*,
646 F. Supp. 3d 101 (D.D.C. 2022) ........................................................ 7

*Chung v. Dep't of Just.*,
333 F.3d 273 (D.C. Cir. 2003) ............................................................... 22

*City of New Bedford v. Locke*, Civ. A.,
No. 10-10789, 2011 WL 2636863 (D. Mass. June 30, 2011) .................. 25

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ....................................................................... 13, 20

*Comm. for a Constructive Tomorrow v. Dep't of the Interior*,
No. 24-cv-774, 2024 WL 2699895 (D.D.C. May 24, 2024) .................. 8, 11

*Dallas Safari Club v. Bernhardt*,
453 F. Supp. 3d 391 (D.D.C. 2020) ........................................................ 9

*Dellinger v. Bessent*,
No. 25-5028, 2025 WL 559669 (D.C. Cir. Feb. 15, 2025) ...................... 28

*Dew v. United States*,
192 F.3d 366 (2d Cir. 1999) ................................................................. 22

*Dickson v. Direct Energy, LP*,
69 F.4th 338 (6th Cir. 2023) ................................................................ 16

*Doe v. Stephens*,
851 F.2d 1457 (D.C. Cir. 1988) ............................................................ 23

*DSE, Inc. v. United States*,
169 F.3d 21 (D.C. Cir. 1999) ............................................................... 29

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
878 F.3d 371 (D.C. Cir. 2017) ............................................................. 13

*Food & Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ........................................................................... 18

*Food & Water Watch, Inc. v. Vilsack*,
808 F.3d 905 (D.C. Cir. 2015) ............................................................. 20

*Gadelhak v. AT&T Servs., Inc.*,
950 F.3d 458 (7th Cir. 2020) .......................................................... 15, 16

*Garey v. James S. Farrin, P.C.*,
35 F.4th 917 (4th Cir. 2022) ............................................................... 15

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*,
  415 U.S. 423 (1974) ................................................................................................. 29

*Halcomb v. Woods*,
  610 F. Supp. 2d 77 (D.D.C. 2009) ............................................................................ 17

*Hanson v. District of Columbia*,
  120 F.4th 223 (D.C. Cir. 2024) .................................................................................. 7

*Hill v. U.S. Dep't of the Interior*,
  699 F. Supp. 3d 1 (D.D.C. 2023) .............................................................................. 21

*Homan v. Goyal*,
  711 A.2d 812 (D.C. 1998) ......................................................................................... 18

*Iowaska Church of Healing v. Werfel*,
  105 F.4th 402 (D.C. Cir. 2024) ................................................................................. 21

*Jeffries v. Volume Servs. Am. Inc.*,
  928 F.3d 1059 (D.C. Cir. 2019) ................................................................................ 17

*Jones v. U.S. Dep't of Hous. & Urban Dev.*,
  No. 11 CIV. 0846 (RJD) (JMA), 2012 WL 1940845 (E.D.N.Y. May 29, 2012) ..................... 23

*Krakauer v. Dish Network*,
  925 F.3d 643 (4th Cir. 2019) ............................................................................. 15, 16

*Larijani v. Georgetown Univ.*,
  791 A.2d 41 (D.C. 2002) ........................................................................................... 17

*League of Women Voters of the U.S. v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) ................................................................................... 8, 20

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .............................................................................................. 8, 13

*Lupia v. Medicredit, Inc.*,
  8 F.4th 1184 (10th Cir. 2021) ................................................................................... 16

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) .................................................................................................... 27

*Munaf v. Geren*,
  553 U.S. 674 (2008) .................................................................................................... 7

*Nat'l Ass'n of Home Builders v. EPA*,
  667 F.3d 6 (D.C. Cir. 2011) ...................................................................................... 19

*Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*,
No. 1:25-cv-239, 2025 WL 314433 (D.D.C. Jan. 28, 2025)..................................... 7

*Nat'l Taxpayers Union, Inc. v. United States*,
68 F.3d 1428 (D.C. Cir. 1995).................................................................... 19

*Nken v. Holder*,
556 U.S. 418 (2009)................................................................................ 8

*Olu-Cole v. E.L. Haynes Pub. Charter Sch.*,
930 F.3d 519 (D.C. Cir. 2019)................................................................. 10

*Parks v. IRS*,
618 F.2d 677 (10th Cir. 1980)................................................................. 24

*People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*,
797 F.3d 1087 (D.C. Cir. 2015)............................................................... 20

*People for the Ethical Treatment of Animals*,
130 F. Supp. 3d.................................................................................... 27

*Randolph v. ING Life Ins. & Annuity Co.*,
973 A.2d 702 (D.C. 2009)...................................................................... 16

*Rimmer v. Holder*,
700 F.3d 246 (6th Cir. 2012)................................................................. 23

*Roe v. Dep't of Def.*,
947 F.3d 207 (4th Cir. 2020)................................................................. 27

*Sampson v. Murray*,
415 U.S. 61 (1974)................................................................................ 8

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*,
No. 23-975, 2025 WL 1520964 (U.S. May 29, 2025) ............................... 27

*Six v. IQ Data Int'l, Inc.*,
129 F.4th 630 (9th Cir. 2025)................................................................. 16

*Sprint Commc'ns Co. v. APCC Servs., Inc.*,
554 U.S. 269 (2008).............................................................................. 19

*Sussman v. U.S. Marshals Serv.*,
494 F.3d 1106 (D.C. Cir. 2007)............................................................... 23

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........................................................ 8, 14, 15, 17

*U.S. Dep't of Health & Hum. Servs.*,
   564 F. Supp. 3d 605 (N.D. Ohio 2021) .................................................................. 25

*U.S. Dep't of Lab. v. Wolf Run Mining Co.*,
   452 F.3d 275 (4th Cir. 2006) ................................................................................. 28

*Univ. of Cal. Student Ass'n v. Carter*,
   766 F. Supp. 3d 114 (D.D.C. 2025) ...................................................... 9, 10, 11, 12

*Wilson v. Libby*,
   535 F.3d 697 (D.C. Cir. 2008) .............................................................................. 22

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ..................................................................................................... 7

*Wis. Gas Co. v. FERC*,
   758 F.2d 669 (D.C. Cir. 1985) .......................................................................... 8, 10

*Wolf v. Regardie*,
   553 A.2d 1213 (D.C. 1989) ............................................................................. 15, 16

**Statutes**

5 U.S.C. § 551 ............................................................................................................ 21

5 U.S.C. § 552a .................................................................................................. *passim*

5 U.S.C. § 702 ............................................................................................................ 25

5 U.S.C. § 704 ..................................................................................................... 21, 22

5 U.S.C. § 706 ......................................................................................................... 1, 7

7 U.S.C. § 202 .............................................................................................................. 5

7 U.S.C. § 2011 ............................................................................................................ 3

7 U.S.C. § 2013 ............................................................................................................ 4

7 U.S.C. § 2015 ............................................................................................................ 4

7 U.S.C. § 2020 .................................................................................................. *passim*

44 U.S.C. § 3501 .......................................................................................................... 1

44 U.S.C. § 3502 ........................................................................................................ 24

44 U.S.C. § 3506 ..................................................................................................... 7, 25

44 U.S.C. § 3507 ............................................................................................ 18, 24

44 U.S.C. § 3512 ................................................................................................. 25

**Rules**

Fed. R. Civ. P. 65(c) ........................................................................................... 29

**Regulations**

7 C.F.R. Part 272 ................................................................................................ 26

7 C.F.R. § 271.3 .................................................................................................... 4

7 C.F.R. § 271.4 .................................................................................................... 4

7 C.F.R. § 272.1 ............................................................................................ *passim*

7 C.F.R. § 273.2 .................................................................................................... 4

88 Fed. Reg. 62,527 (Sept. 12, 2023) ................................................................ 26

89 Fed. Reg. 13,679 (Feb. 23, 2024) ................................................................. 26

Exec. Order No. 14,243,
   90 Fed. Reg. 13,681 (Mar. 20, 2025) ............................................................... 4

**Other Authorities**

Restatement (Second) of Torts § 652B (A.L.I. 1977) ....................................... 15

## INTRODUCTION

In order to break down informational barriers that choke the federal government's ability to detect waste, fraud, and abuse in entitlement programs, the President has directed agencies to provide federal officials with access to program data where permittable by law.  Based on that directive, on May 6, 2025, the U.S. Department of Agriculture ("USDA") informed State Agencies by letter that it intends to collect participant data for the Supplemental Nutrition Assistance Program ("SNAP") but may need their consent.  Administration of SNAP is split between the federal government, which oversees broad aspects of the Program, and the individual States, which themselves contract with third-party providers to administer the day-to-day distribution of benefits. Because of this federal-state partnership, critical information necessary to uncover fraud in SNAP is spread across the fifty-three states and territories as well as several private contractors.

Plaintiffs in this case are SNAP recipients, and two organizations devoted to SNAP and privacy-related policy issues.  They allege that the USDA's intended collection of SNAP data violates the Privacy Act, 5 U.S.C. § 552a, the Paperwork Reduction Act, 44 U.S.C. § 3501, *et seq.* ("PRA"), and the Administrative Procedure Act, 5 U.S.C. § 706 ("APA").  Specifically, they argue that USDA is collecting data without fulfilling requirements in the Privacy Act and PRA, which obligate agencies to provide certain information to the public before collecting and storing sensitive personal information.  Plaintiffs also allege that they are harmed by the collection of their information by USDA officials to whom they did not consent to provide their information.  They posit that those officials may not properly safeguard their data.  Based on these allegations, Plaintiffs have moved the court for the extraordinary relief of a Temporary Restraining Order ("TRO").

These claims, however, fail on multiple levels, and cannot justify the emergency relief Plaintiffs seek.  Critically, USDA has not collected or obtained any of the data in question.  Indeed,

USDA has told information holders not to provide the requested data until USDA has completed the procedural steps necessary to ensure that the data received will be appropriately safeguarded and has satisfied all necessary legal requirements.  This fact alone defeats Plaintiffs' claims for standing and irreparable injury necessary to establish entitlement to an injunction, let alone a restraining order.

Plaintiffs' claims also face other fatal deficiencies.  Plaintiffs have failed to establish informational standing because they cannot show they are being denied information to which they are entitled.  Indeed, USDA has published some of the information Plaintiffs seek and is currently preparing to publish the remainder of the sought-after information Plaintiffs and will do so prior to collecting the data in question.  Further, Plaintiffs cannot show their information is being disclosed to unauthorized individuals.  Statutes permit USDA to collect the information in question and federal law restricts the dissemination of that information to unauthorized individuals.  Accordingly, the collection of SNAP participant data bears no resemblance to the harms traditionally cognizable under Article III.

Plaintiffs also fail to show they are likely to succeed on the merits of their claims.  Plaintiffs fail to identify an action justiciable under the APA, which requires a final agency action.  This is because the action they challenge, the data collection initiative identified by the May 6 letter, does not itself require the collection of information, much less announce a policy to forgo the procedures Plaintiffs allege USDA has neglected.  Further, the Privacy Act and PRA do not permit plaintiffs, such as those here, to obtain injunctive relief in the types of actions Plaintiffs here bring and the APA does not permit shoehorning such prohibited claims into the APA's cause of action.

Finally, Plaintiffs cannot establish a violation of the Privacy Act, the PRA, nor the APA.  First, USDA has announced that it is in the process of complying with the Privacy Act and will do

so before collecting the data in question. The Privacy Act only kicks-in when the collection and use of information is at stake; it does not limit prefatory activities. Next, the PRA does not permit a private cause of action, and Plaintiffs again cannot sidestep this limitation by pleading their PRA claim through the APA because of the threshold limitations discussed above. Even if they could, USDA has already complied with the PRA provisions in question. Finally, the data collection announced by USDA is not arbitrary and capricious. Instead, it effectuates USDA's statutory authority and fulfills a vital need to enforce SNAP requirements and tamp down on fraud, which saps vital resources from this critical program.

Based on the forgoing, and for the additional reasons elaborated below, the Court should deny Plaintiffs' Motion for a TRO.

## BACKGROUND

### I. The SNAP Program

The Supplemental Nutrition Assistance Program, also known as "SNAP" (the successor to Food Stamps), is the nation's largest nutrition assistance program. *See* Food and Nutrition Act of 2008, 7 U.S.C. § 2011, *et seq.* ("FNA"); *see also* Supplemental Nutrition Assistance Program ("SNAP"), U.S. Dep't of Agric., https://perma.cc/5KYW-MJ56; Decl. of Shiela Corley, ECF No. 11-1 ¶¶ 4–10 ("Corley Decl."). Through SNAP, Congress sought to "alleviate . . . hunger and malnutrition," and to "permit low-income households to obtain a more nutritious diet." 7 U.S.C. § 2011.

To do so, SNAP established a system through which eligible individuals and households receive monthly benefits on an electronic benefit transfer ("EBT") card, which can be used at authorized retail food stores to purchase food. *See* Corley Decl. ¶ 8.

SNAP is run as a partnership between the Federal government and the States. At the federal level, the USDA through the Food and Nutrition Service ("FNS") is responsible for, in part,

administering SNAP for retail food stores and issuing administrative rules. *See* 7 U.S.C. § 2013(a), (c); 7 C.F.R. § 271.3. Additionally, FNS is charged with overseeing the States' administration of SNAP, including reviewing the States' submitted Plans of Operations and their payment accuracy. 7 U.S.C. § 2020(d); Corley Decl. ¶ 10.

The States, in turn, are responsible for the day-to-day operation of the Program through their designated agencies. *See* 7 U.S.C. § 2020(a). This includes determining eligibility and benefit amounts, issuing benefits to eligible households, and ensuring Program integrity with respect to SNAP recipients. *Id.* § 2020(a)(1); 7 C.F.R. § 271.4. To operationalize the issuance of benefits to eligible households, State Agencies contract with vendors referred to as "EBT Processors" to issue electronic benefits through the EBT system. Corley Decl. ¶ 9.

To confirm eligibility and determine benefit amounts, State Agencies must collect certain information from applicants and recipients. *See* 7 C.F.R. § 273.2(f); *see also* 7 U.S.C. § 2015(e), (l)–(o). State Agencies are required to safeguard the information they collect. This includes a prohibition on disclosing such information with an exception that disclosure is expressly authorized to "persons directly connected with the administration or enforcement" of SNAP, as long as the information is subsequently used only for such administration and enforcement. 7 U.S.C. § 2020(e)(8)(A); *see also* 7 C.F.R. § 272.1(c)(1). Additionally, the FNA requires State Agencies to keep records "as may be necessary to determine whether the program is being conducted in compliance" with SNAP requirements. 7 U.S.C. § 2020(a)(3)(A). Pursuant to the FNA, "[a]ll records, and the entire information systems in which records are contained[]" must be made available to the USDA. *Id.* § 2020(a)(3)(B); 7 C.F.R. § 272.1(e).

## II.  The May 6 Letter

On March 20, 2025, President Trump issued Executive Order 14243 aimed at stopping waste, fraud, and abuse through the elimination of information silos. Exec. Order No. 14,243, 90

Fed. Reg. 13,681 (Mar. 20, 2025) ("EO 14243").  As the Executive Order explains, "unnecessary barriers to Federal employees accessing Government data" creates information silos which create "bureaucratic duplication and inefficiency" impinging on the "Government's ability to detect overpayments and fraud."  *Id.* § 1.  To eliminate these barriers, the President instructed agency heads to "take all necessary steps, to the maximum extent consistent with law," to ensure Federal officials have access to unclassified information "for purposes of pursuing Administration priorities related to the identification and elimination of waste, fraud, and abuse." *Id.* § 3(a).  These efforts were to include access to "comprehensive data from all State programs that receive Federal funding, including, as appropriate, data generated by those programs but maintained in third-party databases."  *Id.* § 3(c).

Based on this directive, USDA published a letter to all SNAP State Agency directors on May 6, 2025.  *See* FNS Data Sharing Guidance, U.S. Dep't of Agric., https://perma.cc/3GDH-THAK ("May 6 Letter"); *see also* Corley Decl. ¶¶ 11–12.  The Letter begins by informing State directors of Executive Order 14243 and that USDA is "committed to effectuating this Executive Order with respect to all programs in its purview."  May 6 Letter at 1.  This includes SNAP.  As the Letter explains, the Federal-State partnership administering of SNAP "takes advantage of our federal system to enable states to meet the needs of their residents" but that "[a]t present, each state, district, territory, and payment processor is a SNAP information silo."  *Id.*

To eliminate these silos, and "to ensure Program integrity," the Letter invokes the USDA's authority to collect information under 7 U.S.C. § 202(a)(3), 7 U.S.C. § 2020(e)(8)(A), 7 C.F.R. § 272.1(c)(1), and 7 C.F.R. § 272.1(e).  *Id.* at 1–2.  The Letter explains that USDA will be collecting information directly from EBT Processors.  Corley Decl. ¶ 11.  But, because some of the contracts between EBT Processors and State Agencies require State approval before information can be

disclosed, the Letter explains to State Agencies that their consent to disclosure would not violate statutory requirements to safeguard SNAP applicant data. *Id.* ¶¶ 9, 12. The Letter also outlines specific records FNS is seeking from the EBT Processors, including "[r]ecords sufficient to identify individuals as applicants for, or recipients of, SNAP benefits," and "[r]ecords sufficient to calculate the total dollar value of SNAP benefits received by participants over time." May 6 Letter at 2. The Letter sets a date range of January 1, 2020 through present for such information. *Id.*

### III. Subsequent Developments

Despite the issuance of the May 6 Letter, USDA has not collected or obtained any of the data outlined in the May 6 Letter. Corley Decl. ¶ 13. Instead, USDA has informed EBT Processors that it will not collect the requested data until all necessary legal and information technology safeguards are in place. *Id.*

To that end, USDA is endeavoring to publishing a new System of Records Notice ("SORN") in compliance with the Privacy Act. *Id.* ¶ 14. USDA began developing this SORN prior to the filing of the present lawsuit. *Id.*

### IV. Procedural History

Plaintiffs filed suit on May 22, 2025. Compl., ECF No. 1 ("Compl."). They consist of four individual plaintiffs who are recipients of SNAP benefits ("Individual Plaintiffs"); MAZON, Inc., an NGO focused on policy advocacy on SNAP issues ("MAZON"); and Electronic Privacy Information Center, a public interest research center focusing on privacy issues ("EPIC"). Compl. ¶¶ 11–17.

Plaintiffs advance three causes of action against Defendants USDA, FNS, and their respective political heads. Count I asserts a violation of the Administrative Procedure Act ("APA") through a violation of the Privacy Act. *Id.* ¶¶ 97–102. Specifically, Plaintiffs allege that Defendants violated the Privacy Act because they failed to publish a SORN, pursuant to 5 U.S.C.

§ 552a(e), before establishing a new system of records to house the requested SNAP data. Count II alleges a violation of the Administrative Procedure Act by asserting that Defendants have not complied with the procedural requirements of the PRA, 44 U.S.C. §§ 3506–07, prior to data collection. *Id.* ¶¶ 103–09. Finally, Count III alleges that Defendants issued the May 6 Letter arbitrarily and capriciously, contrary to the requirements of the APA, 5 U.S.C. § 706(2)(A). *Id.* ¶¶ 110–15.

On May 27, 2025, Plaintiffs filed the presently pending Motion for a Temporary Restraining Order. Mot for a TRO, ECF No. 9 ("TRO Mot."); Mem. in Supp. of Pls.' Mot. for TRO, ECF No. 9-1 ("TRO Mem."). Through their Motion, Plaintiffs seek an injunction preventing the Government from collecting the SNAP data requested pursuant to the May 6 Letter. *See* TRO Mot. at 2–3.

## LEGAL STANDARD

A temporary restraining order, like a preliminary injunction, is extraordinary relief granted only to preserve the status quo. *See Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, No. 1:25-cv-239, 2025 WL 314433, at *2 (D.D.C. Jan. 28, 2025). It is "an extraordinary and drastic remedy," and "never awarded as of right[.]" *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citation omitted). As such, it may "only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain this relief, a plaintiff "must show: (1) 'he is likely to succeed on the merits,' (2) 'he is likely to suffer irreparable harm in the absence of preliminary relief,' (3) 'the balance of equities tips in his favor,' and (4) issuing 'an injunction is in the public interest.'" *Hanson v. District of Columbia*, 120 F.4th 223, 231 (D.C. Cir. 2024) (quoting *Winter*, 555 U.S. at 20); *see also Chef Time 1520 LLC v. Small Bus. Admin.*, 646 F. Supp. 3d 101, 109 (D.D.C. 2022) ("The decision of whether to award a TRO is analyzed using the same factors applicable to preliminary injunctive relief[.]"

(cleaned up)).  When "the Government is the opposing party," the assessment of "harm to the opposing party" and "the public interest" merge.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Plaintiffs bear the burden of showing subject-matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  Because "standing is not dispensed in gross," Plaintiffs must "demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

## ARGUMENT

### I.  Plaintiffs Cannot Demonstrate Irreparable Harm

"The basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)).  To constitute irreparable injury, the harm must be "certain and great, actual and not theoretical, and so imminent that there is a clear and present need for equitable relief to prevent irreparable harm."  *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 7–8 (D.C. Cir. 2016) (citation and alteration omitted).

Although Plaintiffs' failure to demonstrate concrete injury sufficient to establish Article III standing would also mean they cannot demonstrate irreparable harm, the converse is not necessarily true: that a plaintiff has or will suffer an injury-in-fact does not mean that they have demonstrated irreparable harm for purposes of the TRO inquiry.  *See, e.g.*, *All. for Retired Ams. v. Bessent*, --- F. Supp. 3d ---, 2025 WL 740401, at *20–24 (D.D.C. Mar. 7, 2025) (finding, in denying injunctive relief, that plaintiff had not demonstrated irreparable harm and thus was not entitled to injunction, despite concluding that plaintiff had Article III standing); *Comm. for a Constructive Tomorrow v. Dep't of the Interior*, No. 24-cv-774, 2024 WL 2699895, at *4 (D.D.C. May 24, 2024) ("While Plaintiffs have shown a substantial likelihood of standing, they have not demonstrated

that they will suffer irreparable harm in the absence of a preliminary injunction or administrative stay.  That is a sufficient basis to deny their motion.").

Critically, "[a] movant's failure to show any irreparable harm is therefore grounds for refusing to issue a temporary restraining order or preliminary injunction, even if the other three factors entering the calculus merit such relief."  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *Univ. of Cal. Student Ass'n v. Carter*, 766 F. Supp. 3d 114, 121 (D.D.C. 2025) (denying TRO because plaintiff failed to make a clear showing of irreparable harm and "leav[ing] for another day consideration of whether [the plaintiff] has standing to sue and has stated a claim upon which relief may be granted"); *Dallas Safari Club v. Bernhardt*, 453 F. Supp. 3d 391, 398 (D.D.C. 2020) (explaining that "if a court concludes that a movant has not demonstrated irreparable harm, it need not even consider the remaining factors").  Because Plaintiffs have not established irreparable harm—and because this failure requires denial of their motion —Defendants address this element first.

## A.  The Individual Plaintiffs Have Failed To Establish Irreparable Injury Resulting From An Alleged Disclosure Of Their Information

Plaintiffs first claim that the Individual Plaintiffs are irreparably harmed by the "disclosure of personal information to unknown numbers of people" at USDA and possibly the U.S. DOGE Service ("USDS"), although allegations of disclosure to USDS are conspicuously absent from both the TRO Motion and Plaintiffs' Complaint.  *See* TRO Mem. at 27–29.  This allegation of harm— let alone irreparable harm—fails on multiple levels.[1]

---

[1] At the outset, Plaintiffs' alleged harm of improper "disclosure" is not tied to Plaintiffs' pleaded causes of action in their Complaint, which allege procedural and informational claims in violation of the APA.  *See* Compl. ¶¶ 97–115.  Indeed, there are no allegations of unlawful disclosure, for example in violation of the Privacy Act, which prohibits disclosure of agency records subject to enumerated exceptions.  *See* 5 U.S.C. § 552a(b).

First, and most fundamentally, USDA has not collected any information pursuant to the May 6 Letter. Corley Decl. ¶ 13. Instead, USDA is endeavoring to create a new SORN complying with all necessary legal requirements, and has directed the EBT Processors not to provide the data until those requirements have been satisfied. *Id.* ¶ 13–14. Specifically, USDA has instructed EBT Processors to refrain from sending any data until USDA completed procedural steps to ensure that data received would be appropriately safeguarded and to satisfy all necessary legal requirements. *Id.* ¶ 13.

Thus, Plaintiffs have failed to establish the "certain and great" injury that this Circuit requires to demonstrate irreparable injury. *See Wis. Gas Co.*, 758 F.2d at 674; *see also Olu-Cole v. E.L. Haynes Pub. Charter Sch.*, 930 F.3d 519, 529 (D.C. Cir. 2019) (applying *Wisconsin Gas* requirement that irreparable injury must be "certain and great"). There has been no disclosure and any alleged future disclosure without the necessary procedures about which Plaintiffs' complain is entirely speculative.

Second, even if the States and EBT Processors were providing information to USDA— which they are not—Plaintiffs would still fail to establish irreparable harm, because USDA and FNS are prohibited from publicly disclosing the requested data by both the Privacy Act and the Food and Nutrition Act. As two Judges in this District have observed in denying injunctive relief in other data access cases, "courts in this District have consistently 'declined to find irreparable injury' from the [intragovernmental] disclosure of private information 'where the challenged disclosure is not public,' but instead is to a small number of 'individuals obligated to keep [the information] confidential.'" *All. for Retired Ams.*, 2025 WL 740401, at *21 (quoting *Univ. of Cal. Student Ass'n*, 766 F. Supp. 3d at 121 (some quotation marks omitted)). Thus, in *Alliance for Retired Americans*, the court denied—for failure to establish a likelihood of irreparable injury—

an injunction preventing the Department of the Treasury from sharing information with individuals associated with the USDS. *See id.* at *1. And in *University of California Student Association*, the court denied on irreparable harm grounds the plaintiff's motion for a temporary restraining order to prevent the Department of Education from disclosing student members' personal information to individuals affiliated with USDS. 766 Supp. 3d at 123. As that court explained, where information is disclosed to an identified group of individuals with an obligation not to disseminate it publicly, "a court can fashion adequate corrective relief after the fact." *All. for Retired Ams.*, 2025 WL 740401, at *21 (cleaned up). "For example, this Court could order the small number of individuals who received the information to return or destroy it." *Id.* "The 'possibility' that adequate relief of that kind 'will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.'" *Id.* (cleaned up).

Other cases in this District similarly reject the notion that mere disclosure of information constitutes irreparable harm, when the recipient of the information is under an obligation not to disseminate the disclosed information to the public or otherwise disclose it more broadly. *See, e.g.*, *Baker DC v. Nat'l Labor Rels. Bd.*, 102 F. Supp. 3d 194, 203 (D.D.C. 2015) (no irreparable harm from disclosure of plaintiffs' personal information to a union because regulations placed "limits" on the union's use of the information); *Ashland Oil, Inc. v. FTC*, 409 F. Supp. 297, 308 (D.D.C. 1976) (disclosure of trade secrets to congressional subcommittee would not cause irreparable harm because it would "not lead inexorably to either public dissemination or disclosure"). Rather, "[c]ourts find dissemination of information to be an irreparable injury where, for example, highly sensitive information will be made public, or ends up in the hands of someone with no obligation to keep it confidential." *Univ. of Cal. Student Ass'n*, 766 F. Supp. 3d. at 121 (emphasis in original).

Finally, as the court noted in *University of California Student Association*, "the remedies provided in the Privacy Act . . . confirm that [Plaintiffs] are not suffering (and will not suffer) an irreparable harm." 766 F. Supp. 3d. at 123. The Privacy Act provides a private right of action and money damages for intentional or willful unauthorized disclosures. 5 U.S.C. § 552a(g)(4). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297–98 (citation omitted).

Because the individual plaintiffs cannot show irreparable harm, their application for a TRO should be denied on that basis alone.

### B.  The Organizational Plaintiffs' Alleged Denial Of Information Is Neither Harmful Nor Irreparable

Next, Plaintiffs claim they are irreparably harmed by USDA's denial of information "vital to an ongoing debate" such as the records being held and the privacy safeguards in place. TRO Mem. at 29–30. As demonstrated by the fact that USDA intends to publish a new SORN in the Federal Register in connection with its collection of data and comply with all other procedural requirements prior to collecting SNAP data, it is clear that the Organizational Plaintiffs are neither suffering a present harm nor would any hypothetical harm be irreparable. *See* Corley Decl. ¶ 14. In fact, USDA has committed to satisfying all procedural requirements prior to collecting data. *Id*. There is no deprivation of information allegedly required to be disclosed prior to any data collection, and therefore no irreparable harm justifying any relief, let alone emergency injunctive relief.

### C.  Mazon Fails To Establish Irreparable Injury Based On Alleged Distrust

MAZON claims further irreparable injury to its organizational mission, alleging that USDA's actions have caused some to become mistrustful of SNAP and thus unlikely to register,

12

causing those individuals to go hungry.  TRO Mem. at 31.  Such conjecture about the potential

actions and feelings of third-parties is the height of speculation which cannot constitute irreparable

harm.  *See Chaplaincy of Full Gospel Churches*, 454 F.3d at 297; *see also Clapper v. Amnesty Int'l*

*USA*, 568 U.S. 398, 414 (2013) (Article III standing cannot be establish based on the unfettered

choices made by independent actors not before the court); *All. for Ret. Ams.*, 2025 WL 740401, at

*23.  Moreover, because no data has been collected, the chain of events MAZON conjures becomes

even more speculative.  Finally, even if the data collection foreshadowed by the USDA letter

caused applicants to mistrust SNAP, that mistrust would itself be irrational.  USDA has always had

the statutory authority to collect state data for specific purposes and applicants have always been

on notice that USDA can monitor payment data to prevent fraud and to protect the integrity of

SNAP.  *See* 7 U.S.C. § 2020(e)(8)(A), (a)(3)(B); 7 C.F.R. § 272.1(c)(1), (e).

## II.  Plaintiffs Are Unlikely To Succeed On The Merits Of Their Claims

### A.  Plaintiffs Have Failed To Establish A Likelihood Of Article III Standing

At its "irreducible constitutional minimum," the doctrine of standing requires a plaintiff,

as the party invoking the Court's jurisdiction, to establish three elements: (1) a concrete and

particularized injury-in-fact, either actual or imminent, (2) a causal connection between the injury

and defendants' challenged conduct, and (3) a likelihood that the injury suffered will be redressed

by a favorable decision.  *Lujan*, 504 U.S. at 560.  To be entitled to a TRO or preliminary injunction,

Plaintiffs must demonstrate a "substantial likelihood of standing."  *Elec. Priv. Info. Ctr. v.*

*Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 377 (D.C. Cir. 2017).

Plaintiffs advance four separate theories regarding their standing to bring this action.  *See*

TRO Mem. at 12–20.  Each is unavailing.

### 1. Plaintiffs Have Failed to Establish Injury-in-Fact from the Alleged Disclosure of Their Information

First, Plaintiffs argue that they have met Article III's injury-in-fact requirement because their alleged injuries mirror the "close historical or common-law analogue[s]" of the torts of intrusion upon seclusion, breach of confidence, and emotional distress required by *TransUnion LLC v. Ramirez*, 594 U.S. 413, 414 (2021). *See* TRO Mem. at 13–15. Specifically, they claim that the actual or imminent disclosure of the Individual Plaintiffs' private information constitutes injury-in-fact. *Id.* at 13.

Plaintiffs' arguments fail because there has been no provision of participant data to USDA. *See* Corley Decl. ¶ 13. Thus, the injury they allege has neither occurred, nor is imminent. This alone defeats plaintiffs' standing claims.

Additionally, Plaintiffs have failed to show that their information has been or will be improperly "disclosed." Both USDA and FNS have statutory rights to seek the information in question. *See* 7 U.S.C. § 2020(a)(3); *id.* § 2020(e)(8)(a). As noted above, the Privacy Act and the Food and Nutrition Act also bind USDA and FNS from publicly disclosing such information. 5 U.S.C. § 552a(b); 7 U.S.C. § 2020(e)(8)(a)(ii). Indeed, Plaintiffs do not allege that USDA or FNS will publicly disclose their information once obtained from the EBT Processors, nor could they, as such claims would be entirely speculative. *See, e.g.*, *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Dep't of Lab.*, --- F. Supp. 3d ---, 2025 WL 1129227, at *6 n.6 (D.D.C. Apr. 16, 2025).

Finally, the harms alleged by Plaintiffs do not constitute concrete or particularized injury. Plaintiffs do not allege physical or monetary injury, but, instead, "intangible harms" related to the alleged invasion of their privacy. While the Supreme Court has recognized that "[v]arious intangible harms can . . . be concrete[,]" cognizable intangible injury must still bear "a close

relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion*, 594 U.S. at 425. As examples, in *TransUnion*, the Supreme Court provided "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.* Plaintiffs themselves offer the tort examples of intrusion upon seclusion, breach of confidence, and emotional distress. But, the harms alleged by plaintiffs bear no resemblance to those recognized by these common law examples.

The tort of intrusion upon seclusion makes liable any person "who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B (A.L.I. 1977); *see also Wolf v. Regardie*, 553 A.2d 1213, 1217 (D.C. 1989). The tort has three elements: "(1) an invasion or interference by physical intrusion, by use of a defendant's sense of sight or hearing, or by use of some other form of investigation or examination; (2) into a place where the plaintiff has secluded himself, or into his private or secret concerns; (3) that would be highly offensive to an ordinary, reasonable person." *Wolf*, 553 A.2d at 1217 (cleaned up, citations omitted). The D.C. Court of Appeals has explained that the "the kind of invasion that this cause of action seeks to redress" are various forms of offensive "invasions" including harassment, peeping, eavesdropping, etc. *See id.* at 1217–18; *see also Krakauer v. Dish Network*, 925 F.3d 643, 653 (4th Cir. 2019) (addressing "intrusions made via phone calls"). Or, as then-Judge Barrett termed it in a case cited by *TransUnion*, "irritating intrusions." *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020); *see also TransUnion*, 594 U.S. at 425.[2]

_____

[2] For additional examples of injury contemplated by the tort of intrusion upon seclusion, *compare Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 919, 922 (4th Cir. 2022) (finding standing where

Plaintiffs pleaded harm stems from the alleged provision of their information from EBT Processors to USDA, even though this transfer has not yet occurred. First, there is no "invasion" because USDA and FNS are entitled by statute to obtain this information. *See* 7 U.S.C. § 2020(a)(3); *id.* § 2020(e)(8)(A); 7 C.F.R. 272.1(c)(1); *id.* § 272.1(e). As such, USDA and FNS's solicitation of these records bears no resemblance to the "irritating" intrusions envisioned by the tort, which necessarily are not legally authorized.

Second, Plaintiffs voluntarily provided the information in question to the State Agencies with full knowledge that USDA and FNS have statutory authority to inspect and audit their records. Thus, Plaintiffs cannot maintain an expectation of privacy for these records. *See Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702, 711–12 (D.C. 2009) ("Without an allegation that the data involved here were disclosed to and viewed by someone unauthorized to do so, appellants have failed to state a claim[.]"); *Wolf*, 553 A.2d at 1218 ("[A] colloquy in which [plaintiff] voluntarily participated, could hardly be considered intrusive.").

Finally, even if Plaintiffs could show that USDA and FNS employees' obtaining their records could be analogized to an "invasion or interference" that has traditionally been actionable, the access is not analogous to the types of conduct that have been deemed "highly offensive to an

---

defendants had obtained plaintiffs' information to mail unsolicited advertising materials to the plaintiffs' homes); *Krakauer*, 925 F.3d at 653 (addressing "intrusions made via phone calls"); *Gadelhak*, 950 F.3d at 462 (finding standing based on "irritating intrusions" caused by unwanted text messages, which is "analogous to [the] type of intrusive invasion of privacy" covered by the tort of intrusion upon seclusion); *Dickson v. Direct Energy, LP*, 69 F.4th 338, 345–46 (6th Cir. 2023) (concluding that "invasion-of-privacy-like harm flow[s] from unwanted telephonic communications" in part because such communications "interject[] [the caller] into [the recipient's] private sphere"); *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1192 (10th Cir. 2021) (standing based on unwanted telephone communications because they were an "unwanted intrusion into [the plaintiff's] peace and quiet"); *Six v. IQ Data Int'l, Inc.*, 129 F.4th 630, 634 (9th Cir. 2025) (explaining that other courts have "found that the harm caused by unwanted communications bears a close relationship to intrusion upon seclusion" (emphasis added)).

ordinary, reasonable person" for purposes of the tort.  There is no contention that Plaintiffs' information has been or will be shared outside USDA, FNS, or to others likely to misuse the information.  Essentially then, Plaintiffs' claim of injury amounts to the following: they provided information to the State Agencies to obtain benefits knowing that USDA and FNS may request their records.  Nevertheless, Plaintiffs now fear that USDA and FNS may mishandle or improperly disclose their data.  Under no circumstance though could the agency's conduct in seeking data they have every right to inspect be considered highly offensive, tortious conduct.  Indeed, as in *TransUnion*, Plaintiffs would have no reason to know that a USDA or FNS employee has accessed their specific information.  *See* 594 U.S. at 438 (emphasizing that certain plaintiffs had not suffered an injury sufficient to support standing where no evidence showed they "even *knew*" their files contained inaccurate information (emphasis in original)).

The same is true for breach of confidence, which "lies where a person offers private information to a third party in confidence and the third party reveals that information to another." *Jeffries v. Volume Servs. Am. Inc.*, 928 F.3d 1059, 1064 (D.C. Cir. 2019) (quotation omitted).  As explained above, the information was provided with the knowledge that the USDA and FNS have full authority to request and inspect it.  And, again, Plaintiffs do not allege that USDA or FNS will publicly disclose their information once they obtain it.  Nor could they, as such claims would be entirely speculative.

Finally, the tort of intentional infliction of emotional distress requires a plaintiff to show "(1) extreme and outrageous conduct on the part of the defendant which (2) either intentionally or recklessly (3) cause[d] the plaintiff severe emotional distress."  *Halcomb v. Woods*, 610 F. Supp. 2d 77, 80 (D.D.C. 2009) (quoting *Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002)). The conduct here can hardly be described as "so outrageous in character, and so extreme in degree,

as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998) (citation omitted). Nor is there any allegation Defendants sought to collect the information in question to intentionally or recklessly cause Plaintiffs distress, as opposed to the stated purpose of identifying waste, fraud, and abuse in SNAP. In short, the allegations present bear no historical analogue to intentional infliction of emotional distress.

As such, Plaintiffs have failed to demonstrate an injury-in-fact based on the alleged disclosure of their information sufficient to maintain standing in this Court.

### 2. Plaintiffs have Failed to Establish Informational and Procedural Injury

Plaintiffs second and third alleged injuries similarly fail to establish standing. Specifically, Plaintiffs claim they have been denied information required by statute. *See* TRO Mem. at 15–18 (citing 5 U.S.C. § 552a(a); *id.* § 552a(e)(4); 44 U.S.C. § 3507(a)(1)(D)). Plaintiffs also claim they were deprived of the opportunity to comment on USDA and FNS's data collection, as both the Privacy Act and the PRA require public notice and comment regarding the actions alleged. *See id.* at 18–19.

Those provisions cannot be the basis for injury because the obligation to provide notice and comment have not yet occurred. As to the Privacy Act's SORN requirement, USDA and FNS have not yet collected the data in question, and therefore not established the system of record which will house the data. *See* 5 U.S.C. § 552a(e)(4). As outlined in the Corley Declaration, USDA and FNS intend to go through any remining necessary procedures before "maintain[ing], collect[ing], us[ing], or disseminat[ing]" the data in question. *Id.* § 552a(a)(3); Corley Decl. ¶ 14. Thus, the alleged harms Plaintiffs plead are neither actual nor imminent. Further, they do not stem from, nor will they be redressed by, enjoining the collection of data: no data has been collected and USDA does not intend to collect data until all procedural steps are completed. *See Food & Drug Admin.*

*v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) ("[C]ausation and redressability—are often 'flip sides of the same coin.'" (quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 288 (2008))).

### 3.    MAZON Fails to Establish Independent Organizational Injury

Finally, MAZON alleges distinct injury to its anti-hunger mission. *See* TRO Mem. at 19–20. Specifically, it alleges two injuries resulting from USDA's publishing of the May 6 Letter, which make its work more difficult. First, MAZON partners with direct service providers to assist individuals through SNAP applications by providing "educational resources and timely updates on state and federal SNAP policy changes[.]" Decl. of Abby J. Leibman, ECF No. 9-6, ¶ 9. MAZON claims that the lack of specifics provided by the May 6 Letter has created such uncertainty that it is required to "continually revis[e] educational materials and shift[] priorities in its work." *Id.* ¶ 12.

Second, MAZON claims that the May 6 Letter will create a chilling effect as certain vulnerable populations may be "hesitant to share sensitive personal information" and MAZON can no longer reassure these populations that their information is safe. *Id.* ¶ 13.

An organization asserting standing on its own behalf must demonstrate that it has suffered a "concrete and demonstrable injury to [its] activities—with [a] consequent drain on [its] resources—constitut[ing] . . . more than simply a setback to the organization's abstract social interests." *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 11 (D.C. Cir. 2011) (*quoting Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995)). "'[T]he organization must allege that discrete programmatic concerns are being directly and adversely affected' by the challenged action." *Nat'l Taxpayers*, 68 F.3d at 1433 (quoting *Am. Legal Found. v. FCC*, 808 F.2d 84, 92 (D.C. Cir. 1987)). "An organization's ability to provide services has been perceptibly impaired when the defendant's conduct causes an 'inhibition of [the organization's] daily

operations.'" *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (quoting *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1094 (D.C. Cir. 2015)).  Further, plaintiff organizations cannot "manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 402.

First, many of MAZON's claims are speculative.  That individuals will be chilled from providing information to State Agencies, even though USDA and FNS already have statutory authority to collect the information, is speculative and objectively unreasonable. *See Clapper*, 568 U.S. at 402.

Second, some of MAZON's claims are factually inaccurate.  For example, to the extent MAZON claims that some of its harms stem from uncertainty around "what information USDA is collecting, how it will be used, [or] who will have access to it," TRO Mem. at 20, the answers are provided in the Letter.  First, it is USDA and FNS doing the collecting. *See* May 6 Letter at 1 ("USDA and FNS [will] obtain SNAP data from State agencies and, by extension, their contractors").  The information is being used to "ensure Program integrity, including by verifying the eligibility of benefit recipients." *Id.* at 2.  And the data being requested is "[r]ecords sufficient to identify individuals as applicants for, or recipients of, SNAP benefits," including personal identifying information and "[r]ecords sufficient to calculate the total dollar value of SNAP benefits received by participants over time[.]" *Id.*

Third, USDA and FNS are already preparing the SORN and notifications which will provide the information MAZON claims it lacks.  Thus, MAZON's injuries do not stem from the May 6 Letter, nor are they certain or imminent, as they will soon have the information they claim to need.

Finally, MAZON already prepares educational materials and updates on SNAP policy as part of its organizational mission. Working incrementally harder at a job it already does cannot constitute the devotion of significant resources required to demonstrate injury. *See Iowaska Church of Healing v. Werfel*, 105 F.4th 402, 412–13 (D.C. Cir. 2024) (cleaned up) (requiring organizational plaintiffs to show "concrete and demonstrable injury to the organization's activities" such as a "consequent drain on the organization's resources[]" rather than "simply a setback to the organization's abstract social interests.").

### B. Plaintiffs Fail To Establish Likelihood Of Success On The Merits Of Their APA Claims

#### 1. The May 6 Letter Is Not Final Agency Action

Only "final agency action" is reviewable under the APA. 5 U.S.C. § 704. That requirement has two distinct parts. *See Hill v. U.S. Dep't of the Interior*, 699 F. Supp. 3d 1, 18 (D.D.C. 2023). First, the thing being challenged must be "agency action" recognized by the APA, which defines the term to include a specific "rule, order, license, sanction, relief, or the equivalent[.]" 5 U.S.C. § 551(13).

Second, agency action must be "final." The Supreme Court has laid out a two part test for finality, including that (1) "the action must mark the consummation of the agency's decisionmaking process," rather than being "of a merely tentative or interlocutory nature[;]" and (2) "the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow[.]" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citation and internal quotations omitted). The APA expressly excludes "preliminary, procedural, or intermediate agency action[s] or ruling[s]." 5 U.S.C. § 704.

Here, Plaintiffs allege that the May 6 Letter is final agency action consummating USDA's decision to require EBT Processors to provide records. But, the gravamen of Plaintiffs' complaint

and TRO motion is that USDA has required the provision of records without the proper notice and comment-like procedures required by the Privacy Act and PRA.  *See, e.g.*, Compl. ¶¶ 101, 108. The May 6 Letter is silent on these requirements, simply not announcing any agency determination whether to conduct the actions Plaintiffs seek.  Because the agency fully intends to publish a new SORN, the May 6 Letter is not final agency action.  Corley Decl. ¶ 14.  In other words, the Letter itself does not require the collection of data—it begins the process that will eventually lead to the collection of data.  The beginning of that process is interlocutory action not reviewable under the APA.  *Bennett*, 520 U.S. at 177–78.

### 2. Plaintiffs Cannot Assert Violations Of The Privacy Act Through The APA

Plaintiffs cannot use the APA to circumvent the Privacy Act's carefully drawn limitations on the types of relief they can seek.  The APA provides a vehicle for review only in circumstances where "there is no other adequate remedy."  5 U.S.C. § 704; *see also Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (Section 704 "also makes it clear that Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action.").  The Privacy Act provides a "comprehensive remedial scheme" for injuries arising out of the inappropriate dissemination of private information about individuals.  *Wilson v. Libby*, 535 F.3d 697, 703 (D.C. Cir. 2008) (citing *Chung v. Dep't of Just.*, 333 F.3d 273, 274 (D.C. Cir. 2003)).

This rule holds true where a statutory review scheme only provides for review of issues by certain parties; other parties are presumptively precluded from obtaining review of those issues under the APA.  *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984) ("[W]hen a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded."); *see also Dew v. United States*, 192 F.3d 366, 372 (2d Cir. 1999).  It is also true even where the plaintiff may not succeed on the merits of her claim under the alternative

statutory review procedure; the existence of that procedure alone suffices.  *See Rimmer v. Holder*, 700 F.3d 246, 261–62 (6th Cir. 2012); *Jones v. U.S. Dep't of Hous. & Urban Dev.*, No. 11 CIV. 0846 (RJD) (JMA), 2012 WL 1940845, at *6 (E.D.N.Y. May 29, 2012) (reasoning that an alternative was adequate "whether or not relief is ultimately granted").

Section 552a(g) of the Privacy Act establishes the narrow causes of action for which an "individual may bring a civil action against the agency[.]"  *See* 5 U.S.C. § 552a(g)(1).  These causes of actions are:

> (1) when an agency "makes a determination . . . not to amend an individual's record in accordance with his request," ("Amendment Action"), *id.* § 552a(g)(1)(A); (2) when an agency refuses to comply with an individual's request for access to her records, ("Access Action"), *id.* § 552a(g)(1)(B); (3) when the agency fails to maintain an individual's records "with such accuracy, relevance, timeliness, and completeness" as is necessary for a government action and "consequently a determination is made which is adverse to the individual" ("Benefits Action"), *id.* § 552a(g)(1)(C); or (4) where the government "fails to comply with any other provision of this section . . . in such a way as to have an adverse effect on an individual," ("Other Action") *id.* § 552a(g)(1)(D).

Plaintiffs' purported action, alleging a violation of 5 U.S.C. § 552a(e), would fall into an "Other Action" category, pursuant to Section 552a(g)(1)(D).  *See* Compl. ¶ 101.  But the Privacy Act only provides for monetary damages for Other Actions.  *See* 5 U.S.C. § 552a(g)(4); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1122 (D.C. Cir. 2007) (citing *Doe v. Stephens*, 851 F.2d 1457, 1463 (D.C. Cir. 1988)) ("We have held that only monetary damages, not declaratory or injunctive relief, are available to § 552a(g)(1)(D) plaintiffs[.]").  Prospective relief, such as that sought by Plaintiffs, is reserved for Amendment or Access Actions.  5 U.S.C. § 552a(g)(2), (3).

Plaintiffs cannot circumvent the Privacy Act's carefully drawn constraints by raising purported Privacy Act violations through the APA.  Denying Plaintiffs' attempt to obtain broader relief than that provided by the Privacy Act is consistent with the bedrock principle that "where [a] statute provides for certain special types of equitable relief but not others, it is not proper to

imply a broad right to injunctive relief." *Parks v. IRS*, 618 F.2d 677, 684 (10th Cir. 1980) (citing *Cell. Assocs., Inc. v. Nat'l Insts. of Health*, 579 F.2d 1155, 1161–62 (9th Cir. 1978)).[3]

### 3. Plaintiffs Cannot Establish A Violation Of The Privacy Act

Plaintiffs argue that Defendants have violated the Privacy Act by failing to publish or revise a SORN prior to obtaining the records in question. TRO Mem. at 23. But no records have yet been collected. Corley Decl. ¶ 13. And USDA is preparing a SORN for publication. *Id.* ¶ 14. As such, Plaintiffs have failed to demonstrate they are likely to succeed on their Privacy Act-based claim.

### 4. Plaintiffs Cannot Establish A Violation Of The Paperwork Reduction Act

Plaintiffs claim that Defendants violated the PRA by engaging in a statutorily defined "collection of information" without abiding by the PRA's procedural requirements. TRO Mem. at 24; *see also* 44 U.S.C. § 3502(3) (defining "collection of information"); *id.* § 3507(a) (providing that an agency shall not engage in a collection of information unless it has accomplished tasks, including publishing a notice in the Federal Register).

The PRA, however, does not create a private cause of action. *Alegent Health-Immanuel Med. Ctr. v. Sebelius*, 34 F. Supp. 3d 160, 170 (D.D.C. 2014). Seeking to circumvent this barrier,

---

[3] Several courts have recently examined this question in the context of similar, but not precisely analogous, data access cases and come to differing conclusions. *Compare Am. Fed'n of Tchrs. v. Bessent*, No. 25-1282, 2025 WL 1023638, at *6 (4th Cir. Apr. 7, 2025) (J. Richardson, concurring) (Privacy Act likely precludes APA cause of action), *with Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, No. 25-1411, 2025 WL 1249608, at *50–*53 (4th Cir. Apr. 30, 2025); *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Dep't of Lab.*, --- F. Supp. 3d --- , 2025 WL 1129227, at *14–15 (D.D.C. Apr. 16, 2025); *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, No. CV ELH-25-0596, 2025 WL 868953, at *46–47 (D. Md. Mar. 20, 2025); *Am. Fed'n of Tchrs. v. Bessent*, 765 F. Supp. 3d 482, 497–98 (D. Md. 2025) (finding plaintiffs could bring Privacy Act claims through the APA for injunctive relief). The question is currently before the Supreme Court. *See* Application for Stay, *Soc. Sec. Admin. v. Am. Fed'n of State, Cnty. and Mun. Emps.*, *AFL-CIO*, No. 24A1063 (U.S. May 2, 2025).

Plaintiffs have instead attempted to plead their PRA claim through the APA. *See* Compl. ¶¶ 103–09. But APA review is unavailable "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. Such is the situation here. The PRA impliedly forbids the relief sought because it provides for review of the PRA's requirements only when the issue is raised defensively in an enforcement action. *See* 44 U.S.C. § 3512(b) ("The protection provided by this section may be raised in the form of a complete defense, bar, or otherwise at any time during the agency administrative process or judicial action applicable thereto."). For this reason, courts have routinely rejected attempts by plaintiffs seeking judicial review outside the PRA's statutory scheme for alleged PRA violations related to information collection. *See, e.g.*, *City of New Bedford v. Locke*, Civ. A. No. 10-10789, 2011 WL 2636863, at *9 (D. Mass. June 30, 2011), *aff'd*, 701 F.3d 5 (1st Cir. 2012); *Ohio Stands Up! v. U.S. Dep't of Health & Hum. Servs.*, 564 F. Supp. 3d 605, 613 (N.D. Ohio 2021), *aff'd*, No. 21-3995, 2022 WL 1576929 (6th Cir. May 19, 2022) (collecting cases). In sum, because the PRA forbids review of Plaintiffs' affirmative claim, Plaintiffs may not do so under the APA instead. 5 U.S.C. § 702.

Furthermore, Plaintiffs cannot establish that USDA violated the PRA. As Plaintiffs correctly note, the PRA imposes a set of procedural requirements on agencies prior to sponsoring a new collection of information. Specifically, an agency must provide 60-day and 30-day notices in the Federal Register seeking public comment on the collection and await approval from the Office of Management and Budget ("OMB") and a control number for the collection before collecting the information. 44 U.S.C. § 3506(c), (a). Here, despite Plaintiffs' protestations, USDA complied with the relevant procedural requirements.

On September 12, 2023, USDA published a 60-day notice in connection with SNAP that stated that USDA would require the submission of "names, social security numbers, and date of

births of all household members; addresses; and individual or household income information from households." 88 Fed. Reg. 62,527 (Sept. 12, 2023). It also noted that State Agencies would disclose "information obtained from SNAP application forms or contained in case files of participating SNAP households to certain persons," including *inter alia*, "those directly connected with: the administration of SNAP[]" and "the administration of other Federal or Federally assisted means-tested programs." *Id.* The 30-day notice, published on February 23, 2024, also described the information to be gathered and noted that "State Agencies must maintain records to ascertain whether the program is administered in compliance with Federal statutes and regulations . . . for a period of three years from the date of origin." 89 Fed. Reg. 13,679 (Feb. 23, 2024); *see also* Supporting Statement – Part A for OMB Control Number 0584-0064, *available at* https://perma.cc/U48S-DSRE ("Information that State Agencies collect is generally not shared with any organization outside of the U.S. Department of Agriculture (USDA)."). The regulations cited by the 60- and 30-day notices include citations to the requirements on States at 7 C.F.R. Part 272, which make clear that "[e]ach State Agency shall keep such records and submit such reports and other information as required by FNS," 7 C.F.R. § 272.1(e), and that, "[u]se or disclosure of information obtained from SNAP applicant or recipient households shall be restricted to . . . [p]ersons directly connected with the administration or enforcement of the provisions of the Food and Nutrition Act of 2008 or regulations, other Federal assistance programs," *id.* § 272.1(c)(1). Thus, the public, including Plaintiffs, were on notice that the information being collected by States or their contractors in the SNAP applications was at least subject to disclosure to USDA.

Reflecting USDA's compliance with the procedural requirements of the PRA, USDA's collection of information was approved and issued a control number on June 30, 2024, for a period

of three years.  OMB, Off. of Info & Regulatory Affs., https://perma.cc/C79G-SRAH.  There is therefore no basis for Plaintiffs' claims that "USDA has done *nothing* to afford Plaintiff's their rights to information and participation" or "no opportunity to participate in a public process determining how their data is being collected" under the PRA.  TRO Mem. at 2, 17.

### 5.  The May 6 Letter Is Not Arbitrary And Capricious

Arbitrary and capricious review is highly deferential to the agency, and "a court is not to substitute its judgment for that of the agency."  *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Roe v. Dep't of Def.*, 947 F.3d 207, 220 (4th Cir. 2020); *see also Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, No. 23-975, 2025 WL 1520964 (U.S. May 29, 2025).  Under this standard, the agency is afforded a presumption that its actions are "valid" and need only articulate a "satisfactory explanation" that has a "rational connection between the facts found and the choice made."  *Roe*, 947 F.3d at 220 (quotations omitted).  And courts should be wary of interfering with an agency's "ordinary course of [business]" decisions, even if Plaintiffs identify a "specific allegedly-improper . . . action[]" within such ordinary decisions.  *See People for the Ethical Treatment of Animals*, 130 F. Supp. 3d at 1001–02.

Here, USDA cannot be said to have engaged in unreasoned decisionmaking.  Through Executive Order, the President of the United States directed agencies to "[r]emov[e] unnecessary barriers to Federal employees accessing Government data" to "eliminat[e] bureaucratic duplication and inefficiency [to] enhance[e] the Government's ability to detect overpayments and fraud."  EO 14243, § 1.  The Executive Order specifically required agencies to seek lawful access to "State programs that receive Federal funding[.]"  *Id.* §3(a), (c).

Based on this Presidential prerogative, USDA identified SNAP as a federally funded program, administered by the States, whose dispersed storage of information constituted an "information silo" potentially creating "bureaucratic duplication and inefficiency" hindering the

27

Government's ability to identify overpayment and fraud.  May 6 Letter at 1.  USDA identified

lawful statutory and regulatory authorities to collect the information it sought.  *Id.*

Finally, USDA fully intends to issue a SORN to address privacy concerns and safeguards.

Corley Decl. ¶ 14.  Rather than brushing aside other mechanisms for detecting waste, fraud, and

abuse, as Plaintiffs suggest, when the database in question is established, it will represent a new

complementary tool to ensure that food assistance gets to those in need and is not abused through

fraudulent claims.

As such, the May 6 Letter, and its data collection policy, is reasonable and unlikely to be

found arbitrary and capricious.

## III.   Balance of Equities

While Plaintiffs have failed to demonstrate they are irreparably harmed, the Government

would be harmed by an injunction.  At its core, Plaintiffs' proposed injunction would limit the

President's ability to effectuate the policy choices the American people elected him to pursue,

including the President's ability to identify fraud, waste, and abuse in one of the country's largest

entitlement programs.

## IV.   The Court Should Convert the Motion To A Preliminary Injunction

The Court should exercise its discretion to convert Plaintiffs' motion to one for a

preliminary injunction because Defendants have "had a fair opportunity to oppose it."  *U.S. Dep't

of Lab. v. Wolf Run Mining Co.*, 452 F.3d 275, 283 (4th Cir. 2006) ("[A] district court could

properly consider a motion for a TRO as a request for a preliminary injunction, . . . focusing not

on a specific time period but on whether the opposing party had a fair opportunity to oppose it.").

Such an action will conserve judicial and party resources.  Nor will additional briefing be required:

the standards for preliminary injunctions and TROs are identical.  *See Dellinger v. Bessent*, No.

25-5028, 2025 WL 559669, at *3 (D.C. Cir. Feb. 15, 2025).  Here, the Court has allowed for full

briefing and a hearing with timely notice. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 432 n.7 (1974) ("The notice required by Rule 65(a) before a preliminary injunction can issue implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition.").

## V. Plaintiffs Should Be Ordered To Post Substantial Security In Connection With Any Preliminary Injunctive Relief And Any Preliminary Relief Should Be Stayed To Allow Consideration Of Whether To Appeal

For the reasons stated above, Defendants submit that the Court can and should deny Plaintiffs' Motion in its entirety. However, should the Court be inclined to order any injunctive relief, the Court should order Plaintiffs to post substantial security with any preliminary injunction, commensurate with the disruption caused by the injunction.    Under Federal Rule of Civil Procedure 65(c), the Court may issue a preliminary injunction "only if the movant gives security" for "costs and damages sustained" by Defendants if they are later found to "have been wrongfully enjoined." Fed. R. Civ. P. 65(c).    In the event the Court issues an injunction here, the Court should require Plaintiffs to post an appropriate bond commensurate with the scope of any injunction.  *See DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999) (stating that Rule 65(c) places "broad discretion in the district court to determine the appropriate amount of an injunction bond").

Finally, Defendants respectfully request that if this Court does enter injunctive relief, that relief be stayed for a period of seven days to allow the Solicitor General to determine whether to appeal and seek a stay pending appeal.

## CONCLUSION

For all the foregoing reasons, the Court should deny Plaintiffs' Motion for a Temporary Restraining Order.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Branch Director
Civil Division, Federal Programs Branch

_____
Benjamin S. Kurland
Trial Attorney (D.C. Bar Reg. No. 1617521)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Tel: (202) 598-7755
Fax: (202) 616-8460
E-mail: ben.kurland@usdoj.gov

*Counsel for Defendants*

30