# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NAMOD PALLEK, *et al.*,

      Plaintiffs,

    v.

BROOKE L. ROLLINS, in her official capacity as U.S. Secretary of Agriculture, *et al.*,

      Defendants.

Case No. 1:25-cv-01650-JMC

Judge Jia M. Cobb

## DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DIMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.     Plaintiffs Lack Standing.............................................................................................. 2

    A.     Plaintiffs Cannot Demonstrate a Reasonable Expectation of Confidentiality ............. 2

    B.     Plaintiffs Fail to Establish Informational Injury ........................................................ 7

    C.     MAZON Fails to Establish Independent Organizational Injury .................................. 9

II.    USDA's Data Gathering Initiative is Not Arbitrary and Capricious .................................. 9

III.   The Paperwork Reduction Act and Privacy Act Foreclose Plaintiffs' Claims and, Therefore, They Cannot Circumvent These Laws Through the Administrative Procedure Act.................................................................................................................. 11

    A.     The Paperwork Reduction Act Bars Judicial Review of Plaintiffs' Claim under that Statute .............................................................................................................. 11

    B.     Plaintiffs Cannot Raise Alleged Privacy Act Violations Through the Administrative Procedure Act............................................................................... 12

IV.    Plaintiffs' Paperwork Reduction Act and Privacy Act Claims Fail on Their Merits ........ 13

    A.     Plaintiffs Paperwork Reduction Act Claims Fail on their Merits .............................. 13

    B.     Plaintiffs Fail to Establish USDA Violated the Privacy Act ...................................... 15

V.     Recent Developments ................................................................................................ 16

CONCLUSION.................................................................................................................... 17

## TABLE OF AUTHORITIES

**CASES**

*Alegent Health-Immanuel Med. Ctr. v. Sebelius,*
    34 F. Supp. 3d 160 (2014)...................................................................... 12

*Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Dep't of Lab.,*
    778 F. Supp. 3d 56 (D.D.C. 2025) ........................................................... 3

*Am. Fed'n of Tchrs. v. Bessent,*
    --- F.4th ----, 2025 WL 2313244 (4th Cir. Aug. 12, 2025)................... 13

*Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh,*
    295 F.3d 28 (D.C. Cir. 2002) ................................................................. 10

*Block v. Cmty. Nutrition Inst.,*
    467 U.S. 340 (1984)................................................................................ 13

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398, (2013)........................................................................... 7, 9

*Ctr. for L. & Educ. v. Dep't of Educ.,*
    396 F.3d 1152 (D.C. Cir. 2005).............................................................. 8

*Drs. for Am. v. Off. of Pers. Mgmt.,*
    766 F. Supp. 3d 39 (D.D.C. 2025) ........................................................ 12

*Doe v. Stephens,*
    851 F.2d 1457 (D.C. Cir. 1998) ............................................................ 13

*Fla. Audubon Soc'y. v. Bentsen,*
    94 F.3d 658 (D.C. Cir. 1996) .................................................................. 7

*Grosdidier v. Chairman, Broad Bd. of Governors,*
    560 F.3d 495 (D.C. Cir. 2009) .............................................................. 13

*Hastings v. Jud. Conf. of U.S.,*
    770 F.2d 1093 (D.C. Cir. 1985) ............................................................ 12

*Myers v. United States,*
    272 U.S. 52 (1926).................................................................................. 10

*Seila Law LLC v. CFPB,*
    591 U.S. 197 (2020)................................................................................ 10

*Spokeo, Inc. v. Robinson*,
  578 U.S. 330 (2016) ................................................................................ 7

*Steele v. United States*,
  144 F.4th 316 (D.C. Cir. 2025) ........................................................ 11, 14

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ................................................................................ 7

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ............................................................................ 3, 5

*Westcott v. McHugh*,
  39 F. Supp. 3d 21 (D.D.C. 2014) ......................................................... 13

*Wilson v. Libby*,
  535 F.3d 697 (D.C. Cir. 2008) ............................................................. 12

*Wolf v. Regardie*,
  553 A.2d 1213 (D.C. 1989) ..................................................................... 3

## CONSTITUTION

U.S. Const. art. II ........................................................................................ 10

## STATUTES

7 U.S.C. § 2020 ........................................................................... 4, 6, 11, 16

26 U.S.C. § 7602 .......................................................................................... 5

44 U.S.C. § 3506 ...................................................................................... 8, 9

44 U.S.C. § 3507 ...................................................................... 11, 12, 13, 14

44 U.S.C. § 3512 ........................................................................................ 12

## REGULATIONS

7 C.F.R. § 273.2 ........................................................................................... 4

E.O. 14,218, Ending Taxpayer Subsidization of Open Borders,
  90 Fed. Reg. 10,581 (Feb. 19, 2025) .................................................... 15

E.O. 14,243, Stopping Waste, Fraud, and Abuse by Eliminating Information Silos,
   90 Fed. Reg. 13,681 (Mar. 20, 2025), ................................................................. 10, 15

Privacy Act of 1974; System of Records,
   90 Fed. Reg. 26,521 (June 23, 2025) (SORN) ................................................ *passim*

## INTRODUCTION

Bold assertions alone that an agency acted "reflexively" and without reason are insufficient at summary judgment to win the day. By contrast, in initiating the data gathering effort at issue in this matter, USDA[1] actualized a Presidential directive by examining its own programs, identifying a problem with one such program, and determining a reasonable course of action to eliminate that problem. Specifically, USDA made a reasonable determination that the housing of SNAP data in 53 separate State Agencies and various EBT Processors constituted information siloing that obfuscated waste, fraud, and abuse that squanders valuable federal dollars from this critical program. USDA then developed an action plan by identifying statutory and regulatory authority permitting it to gather, review, and verify the relevant data; establishing a new system of records to house and protect that data; and accomplishing the procedural steps required to proceed by publishing a SORN and submitting a Nonsubstantive Change Request to OMB. In doing so, USDA regularly kept State Agencies and the public informed of its purposes, expectations, and course of action. This is simply not unreasoned decisionmaking.

Plaintiffs' opposition to USDA's Motion misses the mark for that reason and others. The Individual Plaintiffs have not demonstrated that they have standing because they fail to establish a reasonable expectation that USDA could not lawfully access the information they provided, as would be required under *TransUnion*. Further, no Plaintiffs can show informational injury stemming from the Paperwork Reduction Act ("PRA"), because USDA was not required to

---

[1] Defendants hereby adopt all terms as defined in their Memorandum in Support of Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 36-1, and Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, ECF No. 39. In addition, this Reply will refer to Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, ECF No. 39, as "USDA Opp'n" and Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss or Motion for Summary Judgment, ECF No. 40 as "Pls.' Opp'n."

undergo the process associated with a new information collection procedure.  And, even if it were, Plaintiffs cannot demonstrate any information they failed to receive or harm from failing to receive it.  Mazon also lacks standing as an organization because all its alleged harms stem from speculative events depending on the actions of independent third parties.

Plaintiffs also fail on the merits of their claims.  USDA's actions were not arbitrary and capricious because the Administrative Record confirms USDA took a reasonable and considered course of action in gathering SNAP data to which it is statutorily entitled to fulfill its responsibility to ensure federal dollars which fund the Program are not wasted.  Finally, Plaintiffs PRA and Privacy Act claims also fail as a matter of law.  Those claims may not be brought through the Administrative Procedure Act ("APA"), and even if they could, Plaintiffs cannot show a violation of either statute.

Thus, for all the reasons outlined in Defendants' Motion, ECF Nos. 36, 36-1, Defendants Opposition to Plaintiffs' Motion, ECF No. 39, and this Reply, the Court should grant Defendants' Motion, deny Plaintiffs' Motion, and dismiss this action.

## ARGUMENT

### I.  Plaintiffs Lack Standing

For all the reasons outlined in USDA's Motion, *see* USDA Mem. at 14–24, and Opposition, *see* USDA Opp'n at 3–10, Plaintiffs have failed to establish concrete injury sufficient to establish Article III standing.  Their opposition to USDA's Motion only serves to highlight their failure to establish an expectation that USDA could not access this information, that they have been injured by a lack of information, or that MAZON rests its claims on no more than speculation.

### A.  Plaintiffs Cannot Demonstrate a Reasonable Expectation of Confidentiality

As explained in USDA's Motion, Plaintiffs lack Article III standing because they cannot show their information has been, or will imminently be, disclosed in a manner which produces

cognizable harm. *See* USDA Mem. at 15–20; *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). USDA is statutorily entitled to this information, there is no indication or allegation that USDA will publicly disclose the information, disclosure to third-party agencies for the purpose of administering or enforcing the FNA is sanctioned by the Privacy Act, and the intragovernmental possession of information without more produces none of the harm traditionally associated with the torts of intrusion upon seclusion or breach of confidence.

Plaintiffs' Opposition, however, insists that the Individual Plaintiffs are experiencing injury by the mere access by USDA to their information and the possibility that their information may be "redisclosed" pursuant to the Routine Uses outlined in USDA's SORN. *See* Pls.' Opp'n at 1–7. But, their arguments fail to establish a reasonable expectation that USDA, or other federal and state agencies, could not access this information. As elaborated in USDA's Motion, Plaintiffs rely on analogies between their alleged harm from USDA's gathering of data and the harms the torts of intrusion upon seclusion and breach of confidence protect against and which are traditionally recognized under *TransUnion* as creating cognizable Article III injury. USDA Mem. at 15–20. Both intrusion upon seclusion and breach of confidence require a reasonable expectation of confidentiality in private information. *See Wolf v. Regardie*, 553 A.2d 1213, 1217 (D.C. 1989) (intrusion upon seclusion requires "(1) an invasion or interference by physical intrusion, by use of a defendant's sense of sight or hearing, or by use of some other form of investigation or examination; (2) into a place where the plaintiff has secluded himself, or into his private or secret concerns; (3) that would be highly offensive to an ordinary, reasonable person." (citations omitted)); *Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Dep't of Lab.*, 778 F. Supp. 3d 56, 73 (D.D.C. 2025) (breach of confidence "lies whe[n] a person offers private information to a third party in confidence and the third party reveals that information to another" (citation omitted)).

3

As USDA has explained, the FNA grants USDA affirmative authority under two separate provisions to gather this information for the purpose of ensuring program integrity. *See* 7 U.S.C. § 2020(a)(3)(B) (providing that "[a]ll records, and the entire information system . . . shall be made available for inspection and audit" to USDA); *id.* § 2020(e)(8)(A) (States must permit disclosure of SNAP data to USDA for the purpose of "administration or enforcement" of the FNA and other federal benefits programs). Indeed, throughout the process, USDA has been clear that its purpose in gathering this information is administration and enforcement of the Program. *See, e.g.*, SORN at 26,521 ("USDA and FNS will use the SNAP data in this system to ensure the integrity of Government programs, including by verifying SNAP recipient eligibility against federally maintained databases, identifying and eliminating duplicate enrollments, and performing additional eligibility and program integrity checks[.]").

Further, contrary to Plaintiffs' claims that they experience injury in the form of a violation of their expectations that this information would not be shared with other federal authorities through the Routine Uses, Congress, through the FNA, put Plaintiffs on notice that such sharing may occur because it authorizes sharing with federal and state law enforcement authorities under certain circumstances. *See* 7 U.S.C. § 2020(e)(8)(C), (E). Further still, the FNA requires States to share information with DHS when it appears that an ineligible alien is receiving SNAP benefits. *Id.* § 2020(e)(8)(F); *id.* § 2020(e)(15). Even further still, SNAP regulations require States to notify all households applying and being recertified for SNAP benefits that their "information may be disclosed to other Federal and State agencies for official examination, and to law enforcement officials[.]" 7 C.F.R. § 273.2(b)(4)(ii). Thus, there is simply no way the Individual Plaintiffs can establish a reasonable expectation that USDA would not have access to this information, or even

potentially use the Routine Uses to verify information with other federal authorities or refer abuse of the Program to the relevant enforcement authorities.

Plaintiffs' opposition makes several assertions regarding their expectations that similarly fail to establish standing. For example, they claim that they did not expect USDA's "inspection and audit" authority under Section 2020(a)(3) to mean that USDA could take possession of the data in question. Pls.' Opp'n at 3–4. But possession plays no part in the harms the torts of intrusion upon seclusion and breach of confidence protect against. *See TransUnion*, 594 U.S. at 424–25. The auditor is provided with the information for inspection whether it reviews that information on site or in its physical possession, so there is no expectation of privacy from the auditor. Even so, it is objectively unreasonable to think an auditor would not need to collect the records they intend to audit. For example, when the Internal Revenue Service audits a taxpayer, they do not come to the individual's house and parse through documents at the kitchen table. *See* 26 U.S.C. § 7602 (authorizing the IRS to issue summons to produce books, papers, records, or other data that may be relevant or material to an investigation). And even if Plaintiffs' expectations of privacy from an auditor were reasonable, USDA has separate authority under Section 2020(e)(8)(A) to gather this information for administration and enforcement of the FNA. It is not limited only to "inspection" and "audit."

In another example, Plaintiffs claim that the "entire purpose of USDA's data collection project . . . is to expansively redisclose information." Pls.' Opp'n at 5. But USDA has been clear its purpose in gathering this data is to conduct program integrity checks through, for example, verifying eligibility and identifying and eliminating duplicate enrollment. *See* May 6 Letter at 2; Nonsubstantive Change Request at 1, 2; SORN at 26,521, 25,522. What other purpose Plaintiffs assert that USDA is requesting this information for is ill-defined in Plaintiffs' briefing, not

supported by the Administrative Record, and speculative beyond the point of supporting Article III standing.

Finally, Plaintiffs repeatedly assert that they are harmed by USDA's data gathering because USDA has not yet entered data and security protocols with some States Agencies pursuant to 7 U.S.C. § 2020(a)(3)(B)(i).  *See* Pls.' Opp'n at 2–6.  But such protocols are required at most only when USDA seeks to access all records and the entire information system of a State Agency pursuant to 7 U.S.C. § 2020(a)(3)(B).  USDA is gathering the records in question pursuant to 7 U.S.C. § 2020(e)(8)(A), and Section 2020(e)(8)(A) does not require USDA to enter a protocol before requesting that a State Agency disclose requested records.

Additionally, the text of the statute does not support a reading which makes security protocols a mandatory prerequisite to information sharing and would, thereby, give States a means to veto a request from USDA.  In full, the subsection provides that "[a]ll records, and the entire information systems in which records are contained . . . shall—be made available for inspection and audit by the Secretary, subject to data and security protocols agreed to by the State agency and Secretary."  7 U.S.C. § 2020(a)(3)(B)(i).  Thus, FNS has a right to inspect and audit records and the subordinate "subject to data and security protocols" clause is not conditioned by mandatory language.  The "subject to" clause applies only if both parties agree to adopt a new security protocol to govern the inspection and audit.  But a state cannot defeat the USDA's statutory inspection and audit right by the simple expedient of refusing ever to agree to any security protocol.

Further, and more fundamentally, Plaintiffs cannot establish cognizable injury based on the lack of negotiated security protocols under Section 2020(a)(3)(B)(i), even assuming those protocols were required.  Plaintiffs have not demonstrated that there is a nonspeculative risk of data insecurity beyond the risk inherent in any information system.  Certainly, the lack of a security

protocol agreement with the States does not itself mean that Plaintiffs are likely to suffer an imminent injury. USDA is already required to safeguard the information in question in accordance with the Privacy Act and, indeed, is instituting "a robust collection of technical safeguards to ensure the integrity of the platform[, including being] designed to meet all technical safeguards required by its system categorization in National Institute of Standards and Technology (NIST) 800-53." SORN at 26,523. Section 2020(a)(3)(B)(i), for its part, sets no standards or mandatory obligations for the referenced security protocols, and there is no reason to believe that satisfying the procedural hurdle of agreement with the States (again, assuming it applies) would meaningfully increase security in any event. Plaintiffs, moreover, cannot create an Article III injury out of an alleged statutory violation; they must show an independent injury-in-fact. *See Spokeo, Inc. v. Robinson*, 578 U.S. 330, 341 (2016). At bottom, Plaintiffs ask the Court to assume their data will be disclosed improperly, but that assumption is based on an impermissible chain of speculation and does not give this Court jurisdiction. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410–14, (2013).

### B. Plaintiffs Fail to Establish Informational Injury

For the first time, Plaintiffs attempt to define what information they believe they have not received to establish informational standing. *See* Pls.' Opp'n at 8 n.6. This alleged missing information is addressed immediately below, but, preliminarily, Plaintiffs make no attempt to explain how they are injured by the lack of such information. That is insufficient to establish cognizable informational injury. *See Fla. Audubon Soc'y. v. Bentsen*, 94 F.3d 658, 665 (D.C. Cir. 1996) (plaintiffs must "show not only that the defendant's acts omitted some procedural requirement, but also that it is substantially probable that the procedural breach will cause the essential injury to the plaintiff's own interest."); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("deprivation of a procedural right without some concrete interest that is affected

by the deprivation—a procedural right in vacuo—is insufficient to create Article III standing.").

Again, Plaintiffs must still "allege injury beyond mere procedural misstep per se to satisfy standing

in a procedural-rights case." *Ctr. for L. & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1160 (D.C. Cir.

2005).

Further, USDA has provided this information. Plaintiffs claim USDA has failed to explain

why the gathering initiative is "necessary for the proper performance of the functions of the

agency." Pls.' Opp'n at 8 n.8 (quoting 44 U.S.C. § 3506(c)(2)(A)(i)). But USDA has explained

that this information is necessary to ensure Program integrity. *See, e.g.*, May 6 Letter at 1 ("At

present, each State, district, territory, and payment processor is a SNAP information silo. These

various entities maintain discrete collections of SNAP application, enrollment, recipient, and

transaction data, each of which is necessary in ensuring the integrity of the Program."). Plaintiffs

also state they have been denied information on "whether the information 'shall have practical

utility.'" Pls.' Opp'n at 8 n.8 (quoting 44 U.S.C. § 3506(c)(2)(A)(ii)). USDA has explained the

utility. *See, e.g.*, SORN at 26,521 ("USDA and FNS will use the SNAP data in [the system of

records] to ensure the integrity of Government programs, including by verifying SNAP recipient

eligibility against federally maintained databases, identifying and eliminating duplicate

enrollments, and performing additional eligibility and program integrity checks[.]").

The same goes with Plaintiffs' other alleged missing information. *Compare* Pls.' Opp'n at

8 n.8 ("whether the collection is 'unnecessarily duplicative'" (quoting 44 U.S.C. § 3506(c)(3)(b)))

*with* May 6 Letter at 1 ("At present, each State, district, territory, and payment processor is a SNAP

information silo."); *compare also* Pls.' Opp'n at 8 n.8 ("the collection will be 'implemented in

ways consistent and compatible . . . with existing reporting and record keeping practices'" (quoting

44 U.S.C. § 3506(c)(3)(E))) *with* SORN at 26,523 ("Records are retained and disposed of in accordance with Section 11(a)(3)(B) of the FNA.").[2]

Thus, even if USDA was required to undergo a new information collection process—and it was not—USDA has provided the required information, and—even had it not—Plaintiffs have not shown how their interests were harmed by that purported lack of information.

### C. MAZON Fails to Establish Independent Organizational Injury

For all the reasons already outlined by Defendants' briefing, Plaintiffs have failed to show MAZON has experienced independent, cognizable harm to its organizational interests. *See* USDA Mem. at 22–24; USDA Opp'n at 8–10. In its Response, Plaintiff still cannot establish "certainly impending" harm, *Clapper*, 568 U.S. at 401–02, because any purported harm is based on the speculative actions of third-parties. That cannot establish Article III standing. *Id.* ("[R]espondents' theory of future injury is too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending.' And even if respondents could demonstrate that the threatened injury is certainly impending, they still would not be able to establish that this injury is fairly traceable to [relevant statute]." (internal citation omitted)).

### II. USDA's Data Gathering Initiative is Not Arbitrary and Capricious

For all the reasons previously explained, USDA's data gathering initiative is not arbitrary and capricious. *See* USDA Mem. at 38–39; USDA Opp'n at 10–13. At its core, USDA's data gathering initiative is an effort to ensure that the federal dollars which fund SNAP benefits are not squandered through duplicative enrollments, payment to ineligible recipients, or fraud. In doing so, USDA identified two separate sections within the FNA—Section 2020(a)(3)(B) and Section

---

[2] These latter two requirements are certifications that USDA must make, *see* 44 U.S.C. § 3506(c)(3), *not* information which must be explained in a public notice, *id.* § 3506(c)(2).

2020(e)(8)(A)—that together illustrate that USDA has the authority to inspect and gather the information in question. USDA has conducted the necessary administrative steps in publishing the SORN and Nonsubstantive Change Request and has kept State Agencies, EBT Processors, and the public informed of its expectations, timelines, and purposes. Indeed, through examination of the information it has received, USDA has identified waste, fraud, and abuse conservatively estimated to total half a billion dollars. *See* Decl. of Shiela Corley ¶ 30, ECF No. 72-1, *California v. USDA*, 3:25-cv-06310 (N.D. Cal.). This is not arbitrary and capricious decisionmaking.

In response, Plaintiffs now charge USDA with not sufficiently questioning whether to implement a directive from the President of the United States to seek out and dismantle information silos. *See* Pls.' Opp'n at 11–13. But, the President is the head of the Executive Branch and entitled to create policy to guide agency decisions. "Under our Constitution, the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the laws be faithfully executed.'" *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020) (quoting U.S. Const. art. II, § 1, cl. 1; *id.*, § 3). "Because no single person could fulfill that responsibility alone, the Framers expected that the President would rely on subordinate officers for assistance." *Id*. at 203–04. To that end, the President has authority to exercise "'general administrative control of those executing the laws,' throughout the Executive Branch of government, of which he is the head." *Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 32 (D.C. Cir. 2002) (quoting *Myers v. United States*, 272 U.S. 52, 164 (1926)). Thus, that USDA heeded a government-wide policy as directed by the President is to be expected—and in itself is not arbitrary and capricious.

Still, the Administrative Record confirms that USDA took Executive Order 14,243's general directive to eliminate information silos and operationalized it in a specific setting, namely by identifying SNAP as containing information silos that facilitated waste, fraud, and abuse, *see,*

*e.g.*, May 6 Letter at 1, and developing the reasoned course of action outlined above. That independently passes the APA's limited requirements, for the reasons previously explained. Again, there is nothing remarkable—or arbitrary or capricious—in USDA using statutorily granted authorities to ensure federal dollars go to deserving recipients.

### III. The Paperwork Reduction Act and Privacy Act Foreclose Plaintiffs' Claims and, Therefore, They Cannot Circumvent These Laws Through the Administrative Procedure Act

#### A. The Paperwork Reduction Act Bars Judicial Review of Plaintiffs' Claim under that Statute

The Paperwork Reduction Act ("PRA") bars Plaintiffs' claims under that statute for the reasons Defendants previously explained. *See* USDA Mem. at 33–35; USDA Opp'n at 13–15. In *Steele v. United States*, the D.C. Circuit drew a clear distinction between (1) challenges to "defects in the PRA process," which are not reviewable, and (2) challenges to the agency's authority to request the relevant information, which courts can consider. *See* 144 F.4th 316, 322–23 (D.C. Cir. 2025); *see also* 44 U.S.C. § 3507(d)(6). Because Plaintiffs' PRA claim falls in the first category, the PRA bars judicial review. Plaintiffs do not challenge whether USDA has authority to obtain the information it seeks, nor could they. *See* 7 U.S.C. § 2020(a)(3), (e)(8); *see also generally* Am. Compl., ECF No. 27. Their PRA claim is limited to a challenge to whether USDA satisfied the statute's procedural requirements. *See* Am. Compl. ¶¶ 133–40. Indeed, Plaintiffs admit as much, explaining that they challenge whether USDA met its obligations "under the [PRA]." Pls.' Opp'n at 16. Contrast that with *Steele*, where the D.C. Circuit concluded that the PRA did not bar a claim that the IRS lacked authority, *under the Internal Revenue Code*, to request tax preparer information for a fee. *See* 144 F.4th at 322–23. Here, OMB approved the information collection. *See* Change Approval. Although Plaintiffs here have not named the Office of Management and Budget as a Defendant, Plaintiffs are, in substance, challenging the validity of OMB's approval of USDA's

Nonsubstantive Change Request. Under 44 U.S.C. § 3507(d)(6), which provides that OMB's decision "to approve or not act upon a collection of information . . . shall not be subject to judicial review" and the logic of *Steele*, the PRA bars judicial review of that claim.

Plaintiffs also do not meaningfully address the separate implied bar of judicial review in 44 U.S.C. § 3512(b). That provision of the statute is clear that the PRA's protections may be raised only in the form of a defense to an agency administrative process or related judicial action. In other words, the PRA is a "shield," not a "sword." *Alegent Health-Immanuel Med. Ctr. v. Sebelius*, 34 F. Supp. 3d 160, 170 (2014). Plaintiffs therefore may not use the statute to challenge a data request that is clearly authorized by the FNA.

Plaintiffs again point the Court to Judge Bates's decision in *Doctors for America v. Office of Personnel Management*, 766 F. Supp. 3d 39 (D.D.C. 2025). *See* Pls.' Opp'n at 16. Plaintiffs agree, however, that whether the APA allows for review of a PRA claim was not at issue in that case. *Id.* at 17 n.13. The Court, of course, has its own obligation to determine whether there is a valid waiver of sovereign immunity that permits Plaintiffs' asserted cause of action, and it would be passing strange to assume jurisdiction based on a different case in which the issue of preclusion was not addressed by the parties or that court.

### B. Plaintiffs Cannot Raise Alleged Privacy Act Violations Through the Administrative Procedure Act

Plaintiffs cannot smuggle an alleged violation of the Privacy Act through an APA claim. The argument is straightforward. The D.C. Circuit has recognized, as to the Privacy Act, that the statute sets forth a "comprehensive remedial scheme," akin to the Freedom of Information Act, the Civil Rights Act of 1964, and the Civil Service Reform Act ("CSRA"). *Wilson v. Libby*, 535 F.3d 697, 703 (D.C. Cir. 2008). That scheme permits certain forms of injunctive relief and, by implication, precludes all others. *See, e.g.*, *Hastings v. Jud. Conf. of U.S.*, 770 F.2d 1093, 1104

(D.C. Cir. 1985) ("[E]ven if a claim of a violation of the Privacy Act could be made out, appellant would not be entitled to the declaratory and injunctive relief he seeks, such relief not being among those expressly made available to remedy past disclosures made in violation of the Privacy Act.").

In the face of comprehensive statutes, litigants are not permitted to "circumvent the [scheme's] requirements and limitations by resorting to the catchall APA," even when "the plaintiff cannot prevail in a claim" under the scheme. *Grosdidier v. Chairman, Broad Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009) (discussing the CSRA); *see also Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984). Multiple decisions by this Court have reaffirmed this principle by dismissing APA claims alleging violations of the Privacy Act. *See Westcott v. McHugh*, 39 F. Supp. 3d 21, 33 (D.D.C. 2014) (citing cases).

The Fourth Circuit's decision in *American Federation of Teachers v. Bessent*, --- F.4th ----, 2025 WL 2313244 (4th Cir. Aug. 12, 2025), is persuasive authority that the Court should question the D.C. Circuit's prior dicta suggesting that APA review is available for alleged Privacy Act violations. *Id.* at *8. Indeed, as the Fourth Circuit explained, the D.C. Circuit in *Doe v. Stephens*, 851 F.2d 1457 (D.C. Cir. 1998), did not address the limitation on the APA's waiver of sovereign immunity, and therefore this Court is free to conclude that the APA does not authorize the broad relief Plaintiffs seek in the face of the Privacy Act's comprehensive remedial scheme. *Am. Fed'n of Tchrs*, 2025 WL 2313244, at *8 n.6.

## IV. Plaintiffs' Paperwork Reduction Act and Privacy Act Claims Fail on Their Merits

### A. Plaintiffs Paperwork Reduction Act Claims Fail on Their Merits

Plaintiffs' Response fails to save their PRA claims. *See* Pls.' Opp'n at 17–19. As previously outlined, USDA was not required to conduct a new PRA information collection process to accommodate its data gathering initiative. *See* USDA Opp'n at 15–17. Plaintiffs' reliance on 44 U.S.C. § 3507(h)(3), does not change that conclusion. That subsection of the PRA prohibits

agencies from making a "substantive or material modification to a collection of information after such collection has been approved by [OMB], unless the modification has been submitted to the Director for review and approval under this subchapter."  44 USC 3507(h)(3).  First, USDA *did* submit the Nonsubstantive Change Request to OMB for review and approval, and OMB approved the request.  *See* Change Approval.  Further, OMB approved USDA's request as a *nonsubstantive* change, which confirms that OMB agreed with USDA that the changes proposed were nonsubstantive, and thus outside of Section 3507(h)(3).  Plaintiffs' objection to OMB's determination is precisely the type of procedural claim Section 3507(d)(6) bars.  *See* 44 U.S.C. § 3507(d)(6); *Steele*, 144 F.4th at 321–24; USDA Opp'n. at 14–15.

But, even if the PRA permitted Plaintiffs' procedural claim that USDA should have conducted a new information collection process, rather than a nonsubstantive change request, nothing in the PRA dictates that determination.  *See* USDA Opp'n at 15–17.  Indeed, intuitively, a new information collection process was not necessary—as noted by the Nonsubstantive Change Request—as "[n]o additional data collection or record keeping is sought [by this []] request[,]" as "most of the[] data elements [requested] are kept as records[,]" by State Agencies and EBT Processors.  Nonsubstantive Change Request at 3.  As the D.C. Circuit's observed in *Steele*, "[t]he PRA imposes requirements on agencies when they collect information from the public."  144 F.4th at 320 (emphasis added).  The data request at issue in this case is not a request for information from the public—Plaintiffs have already provided the information to the States under the previous collection.  It is, instead, a request for the State Agencies to transmit that information as part of a program that USDA oversees and that the federal government funds.  The PRA's substantive requirements just do not apply to this case.

**B.  Plaintiffs Fail to Establish USDA Violated the Privacy Act**

As previously described, Routine Uses 8 and 11 are consistent with the purposes for which the data was collected, and, therefore, Plaintiffs have failed to establish a violation of the Privacy Act.  *See* USDA Mem. at 29–33; USDA Opp'n at 17–21.  Two points are worth highlighting in Plaintiffs' Response.  *See* Pls.' Opp'n at 20–22.

First, Plaintiffs take issue with the SORN's confirmation that any disclosure through a Routine Use must be "consistent with the FNA."  *Id.* at 20 (quoting USDA Mem. at 32); *see also* SORN at 26,522.  As they point out, the SORN states that records may be disclosed pursuant to the Routine Uses "to the extent such uses are authorized by, among other authorities, [the FNA and its regulations], and Executive Orders 14218 and 14243."  SORN at 26,522.  But, as to the referenced Executive Orders, neither purports to create independent statute-like authority to disclose any records, and both affirm that, in carrying out their policy directives, agencies must act consistent with applicable law.  *See* USDA Opp'n at 20–21.

USDA has made clear that it "has and will continue to follow the law, including both the FNA and the Privacy Act."  AR PALLEK-000657.  Thus, any allegation by Plaintiffs that USDA will disclose their records through Routine Uses 8 and 11 in a manner inconsistent with the FNA, despite USDA's commitment and obligation to abide by both the FNA and the Privacy Act is speculative beyond supporting Article III standing and fails to establish a violation of the Privacy Act on the merits.

Second, Plaintiffs claim that USDA's assertion that Routine Uses 8 and 11 "need only be compatible with its own purpose for collection SNAP data" would "effectively eliminate the compatibility requirement whenever there is a second level of data collection."  Pls.' Opp'n at 20.  Admittedly, the caselaw on the Privacy Act's compatibility assessment in such situations is not determinative of this question.  Defendants have suggested that the correct comparison is between

USDA's purpose in gathering the data from the States and its purpose in disclosing it through a Routine Use. USDA Opp'n at 18 n.1. But there is no conclusive D.C. Circuit precedent. As suggested though, it is a distinction without a difference, as the information is collected from SNAP households for the purpose of program integrity, USDA is gathering the data from States for that purpose, and USDA may disclose information pursuant to a routine use for program integrity purposes, including verifying eligibility. *Id.* at 18–19.

## V. Recent Developments

Recently, a Court in the Northern District of California issued a temporary restraining order in a related case brought by a collection of states challenging USDA's data gathering initiative. *See California v. USDA*, 25-cv-06310-MMC (N.D. Ca.), ECF No. 83.

Preliminarily, that court rejected many of the States' claims that are similar to those of the Plaintiffs in this matter. *Id.* at 12–14. For example, the court found the States were unlikely to succeed on their claims that (1) USDA changed an preexisting policy without sufficient explanation; (2) USDA's data gathering initiative lacked a rational connection between the facts found and choices made; (3) USDA failed to examine important problems, such as security concerns, alleged chilling effects, or burdens on the States in providing the data to USDA; (4) USDA failed to adequately consider comments submitted regarding the SORN; and (5) Section 3507(d)(6) did not bar the State's similar PRA claims.

Instead, the Court issued a narrow injunction finding only that Routine Use 8 and 11 appeared to demonstrate USDA's intent to share information in a manner inconsistent with the FNA. *Id.* at 11–12. USDA respectfully disagrees with this assessment for many of the same reasons outlined in the briefing in this case. As explained here, Routine Uses 8 and 11 are compatible with the FNA, *see* Section IV.B., *supra*, and USDA has affirmed that it intends to exercise the Routine Uses for the purposes of verifying data in accord with 7 U.S.C. §

2020(e)(8)(A).  *See* SORN at 26,522 ("USDA will use the SNAP data to ensure the integrity of Government programs, including by verifying SNAP recipient eligibility against federally maintained databases.").  Thus, any other purported use of the Routine Uses for purposes that may conflict with the FNA are speculative beyond establishing Article III standing and fail to establish the Routine Uses are inconsistent with the FNA on the merits.

## CONCLUSION

Based on the foregoing, the Court should grant USDA's Motion, deny Plaintiffs' Motion, and dismiss this action in its entirety.

Dated: September 19, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Branch Director
Civil Division, Federal Programs Branch

_____
BENJAMIN S. KURLAND
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 598-7755
ben.kurland@usdoj.gov

*Counsel for Defendants*